Submitted January 29, affirmed October 8, 2014, petition for review denied February 5, 2015 (356 Or 689)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

CHRISTOPHER ROBIN GENSLER,
*Defendant-Appellant.*

Washington County Circuit Court
C111144CR, C111650CR;
A150491 (Control), A150493

337 P3d 890

Peter Gartlan, Chief Defender, and Zachary Lovett Mazer, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Douglas F. Zier, Senior Assistant Attorney General, filed the brief for respondent.

Before Duncan, Presiding Judge, and Haselton, Chief Judge, and Schuman, Senior Judge.

HASELTON, C. J.

**HASELTON, C. J.**

Defendant, who was convicted in two criminal cases—each of which involved a different victim—appeals, raising 12 assignments of error. We reject without written discussion all but four of those assignments of error and write to address only defendant's contentions that the trial court (1) erred in denying his motion to sever the two cases for separate trials under ORS 132.560;[1] (2) plainly erred under *State v. Leistiko*, 352 Or 172, 282 P3d 857, *adh'd to as modified on recons*, 352 Or 622, 292 P3d 522 (2012), in failing to instruct the jury regarding limitations on its consideration of evidence of defendant's conduct towards the victim in one of the consolidated cases in determining defendant's *scienter* with respect to the other consolidated case; and (3) erred in imposing attorney fees in each of the cases in the absence of evidence of defendant's ability to pay them. For the reasons explained below, we conclude that the trial court did not err in denying defendant's motion to sever the cases, that any instructional error is not plain, and that the trial court did not err in imposing attorney fees. Accordingly, we affirm.

The pertinent facts are few and mainly procedural. In May 2011, the state indicted defendant in Case Number C111144CR on charges of first-degree sodomy, ORS 163.405, and first-degree sexual abuse, ORS 163.427, for acts committed between September 23, 1998 and September 23, 2004, against the victim, J. Thereafter, in July 2011, the state, in a separate indictment, charged defendant in Case Number C111650CR with first-degree sodomy for acts committed between December 1, 1998 and December 31, 1999, against another victim, C. Based on the dates alleged in the indictments, defendant was between 12 and 18 years of age at the time of the alleged conduct. The victims, who were members of defendant's family, were both younger than defendant.

Before trial, the state moved to consolidate the cases under ORS 132.560(1)(b)(A).[2] The trial court granted that motion over defendant's objection.

---

[1] The text of that statute is set out below at 266 Or App at 3-4 n 2, 4.

[2] ORS 132.560 provides, in pertinent part:

"(1) A charging instrument must charge but one offense, and in one form only, except that:

Thereafter, defendant moved to sever the cases for separate trials under ORS 132.560(3). That statute provides:

"If it appears, upon motion, that the state or defendant is *substantially prejudiced* by a joinder of offenses under subsection (1) or (2) of this section, the court may order an election or separate trials of counts or provide whatever other relief justice requires."

(Emphasis added.) Defendant contended that trying the cases together would substantially prejudice him for three reasons.

First, defendant contended that "[a] joint trial would undermine [his] right to a fair trial by removing the protections afforded him by the Oregon Evidence Code's provisions limiting the use of character evidence to show propensity and excluding unfairly prejudicial evidence." Specifically, defendant contended that trying the cases together would substantially prejudice him because the state would be able to present evidence in a single trial that would not be cross-admissible if the cases were separately tried and, as a result, the evidence pertaining to each case would serve as inadmissible propensity evidence in the other case in violation of OEC 404(3).[3] Although defendant acknowledged that he could "ask for a limiting instruction to tell the jury that they should ignore what they've spent a day or two hearing about for purposes of making one decision that *** they're here to make," he explained that "as a practical matter" a "joint trial" would substantially prejudice him.

---

"*****

"(b) Two or more offenses may be charged in the same charging instrument in a separate count for each offense if the offenses charged are alleged to have been committed by the same person or persons and are:

"(A) Of the same or similar character[.]

"*****

"(2) If two or more charging instruments are found in circumstances described in subsection (1)(b) of this section, the court may order them to be consolidated."

[3] OEC 404(3) provides:

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

Second, defendant asserted that, because he expected that he would testify in one case but not the other, a "joint trial would also burden [his] right against self-incrimination" and his right to testify under the Oregon and United States constitutions. According to defendant, that was so because, once he testified in the case pertaining to J that he had not committed the alleged conduct, he would be subject to cross-examination about the case pertaining to C—in which his defense was incapacity due to immaturity under ORS 161.290[4]—and the jury would then hear defendant testify that "something happened" with C "but it happened when [defendant] was under the age of 12."

Finally, defendant contended that a joint trial would "deny him due process protected by the Fourteenth Amendment [to] the [United States] Constitution" and a fair trial under the Sixth Amendment to the United States Constitution and "the criminal procedure provisions of [Article I, section 11, of] the Oregon Constitution." Specifically, defendant posited that "[a] joint trial on these multiple cases would so effectively portray [him] as a serial offender, taint his ability to testify or remain silent, and invite the jury to make decisions based on unfair prejudice, that it would amount to an unfair trial and a violation of due process."

The state countered that defendant had not demonstrated substantial prejudice because "the jury is not going to have any difficulty in separately considering the merits of each case individually." Moreover, relying on *State v. Miller*, 327 Or 622, 969 P2d 1006 (1998), the state explained that, "[i]n a consolidated trial, evidence of each case is admissible for a non-propensity purpose (to prove each separate crime)[.]"[5]

---

[4] *See* ORS 161.290(1) ("A person who is tried as an adult in a court of criminal jurisdiction is not criminally responsible for any conduct which occurred when the person was under 12 years of age.").

[5] Specifically, in *Miller*, the Supreme Court reasoned:

"Because the charges against defendant were joined lawfully for trial under ORS 132.560(1), the evidence of defendant's criminal behavior during each incident was relevant to prove that defendant had perpetrated the particular offenses to which that evidence pertained. That qualifies as a valid noncharacter purpose that supports admission of the state's evidence of defendant's criminal acts. Because the admission of that evidence would not violate OEC 404(3), the trial court correctly determined that defendant failed to show

Alternatively, noting that evidence of other crimes is admissible under OEC 404(3) to prove "a person's motive, intent, or lack of mistake," the state posited that "the court could find that under OEC 404 the evidence in each offense would be mutually admissible in separate trials."

The trial court denied defendant's motion to sever, explaining that defendant had not demonstrated substantial prejudice because the cases are "separate enough that the jury could make a determination very easily on one case, and on the other case and not be confused by the conduct." The court also explained that it could fashion limitations on cross-examination so that defendant could testify in the case pertaining to J without having to testify in the case pertaining to C and suggested that defendant could request instructions to guide the jury's consideration of the evidence. Alternatively, with regard to the issue of the cross-admissibility of evidence, the court explained that, if it were to go through the analysis under OEC 404(3) and apply the analytical construct established in *State v. Johns*, 301 Or 535, 725 P2d 312 (1986), the evidence in one case would be cross-admissible "in the other case to show intent, opportunity, [and] motive." Finally, the court rejected defendant's due process contentions, reasoning that there was no "violation of due process in this particular scenario."

The cases proceeded to trial. Before defendant was called to testify—and contrary to his stated intention during the hearing on the motion to sever—defendant told the trial court that he had decided to testify in both cases. In response, the court noted that the state would be allowed to cross-examine defendant "on both cases, unless [the state] goes outside the scope of *** direct." Ultimately, defendant testified that the alleged conduct pertaining to J had not occurred but recounted that, in 1993—once when defendant

that he would suffer prejudice under ORS 132.560(3) from the admission of that evidence."

327 Or at 632; *see also State v. Beauvais*, 261 Or App 837, 850-51, 322 P3d 1116, *rev allowed*, 355 Or 879 (2014) (holding that, under *Miller*, the state correctly contended that, "when charges have been joined for trial in accordance with ORS 132.560(1), evidence of counts relating to separate victims is regarded as non-propensity evidence with respect to the count or counts to which the evidence pertains and does not offend OEC 404(3) as to the other counts").

was six and once after he had turned seven—"[C], you know, asked me to kiss his penis, and I—he said he would do the same to me, so he did, and then I kissed his penis, and then we pulled our pants up." Defendant further testified that his conduct towards C was not "intended to be a sex act" because defendant "didn't really understand * * * what any of that was about."

Significantly, during trial, the state did not contend that the evidence relating to one case was admissible to prove any element of the other. Ultimately, and consistently with that approach, the state never argued to the jury that it should consider defendant's conduct towards C in determining his guilt with respect to the charges involving J. Conversely, defendant did not request that the court instruct the jury that any evidence relating to one case was not admissible to prove the other case or that it was prohibited from using the evidence in one case as propensity evidence in the other, and the court did not so instruct the jury. Defendant's only exception to the trial court's instructions concerned the failure to instruct the jury that it had to reach a unanimous verdict. The jury convicted defendant of all charges.

At sentencing, defendant objected to the imposition of financial obligations, arguing that "[defendant's] indigent. He has no job, he has no assets." Nonetheless, as part of those obligations, the court ordered that defendant pay $1,300 in court-appointed attorney fees in each case. With regard to whether defendant had the ability to pay those fees, the court explained:

> "[Defendant] does have an inability to pay. But I don't think it's for the next 20 years, he'll be out of prison and he'll be able to get employment at that point if able to work.

> "And I believe his inability to pay will end after he gets out of prison. Let's say [we] make consideration of his financial resources when he gets out of prison because the judgment's good for the next 20 years. And I think he'll be able to pay it off easily within that period of time after he gets out of prison."

The trial court entered a judgment of conviction in each case. Defendant appeals.

In his first assignment of error, defendant contends that the trial court erred in denying his motion to sever the two cases for separate trials under ORS 132.560(3). As before the trial court, defendant contends, among other things, that he was substantially prejudiced because (1) "the evidence in [the one] case was not cross-admissible in the other case, depriving defendant of the protections of OEC 404" and (2) "his defense in the [C] case required admitting the conduct, impairing his defense in the [J] case that the conduct never occurred."

Under ORS 132.560(3), charging instruments that have been consolidated may be severed upon motion if the defendant is "substantially prejudiced by a joinder of offenses." We review a trial court's determination that a defendant failed to demonstrate the existence of substantial prejudice for errors of law based on "the record at the time of the court's ruling on defendant's motion to sever." *State v. Tidwell*, 259 Or App 152, 156, 313 P3d 345 (2013), *rev den*, 355 Or 142 (2014). As we explained in *Tidwell*,

> "'[w]hether the joinder of charges substantially prejudiced a particular defendant involves a case-specific assessment of the charges and the facts alleged to support them.' [*State v. Dimmick*, 248 Or App 167, 178, 273 P3d 212 (2012)]. 'The mere assertion that evidence relating to some charges will influence the jury's consideration of other charges is insufficient.' *Id.* Moreover, a defendant must explain 'what specific prejudice arose from the joinder of [the] charges.' *State v. Barone*, 329 Or 210, 217, 986 P2d 5 (1999), *cert den*, 528 US 1086 (2000) (decided in context of a previous version of the statute that referred only to 'prejudice'). General arguments of prejudice that could be made in any case in which charges are joined are not sufficient to demonstrate substantial prejudice when the defendant fails to relate those arguments to the specific facts of the defendant's case. *Id.*; *see also State v. Thompson*, 328 Or 248, 257, 971 P2d 879, *cert den*, 527 US 1042 (1999) (the defendant failed to show prejudice when he failed to make arguments based on the facts of his case). In addition, and of particular importance to this case, if the evidence pertaining to the separate charges is 'mutually admissible in separate trials or is sufficiently simple and distinct to mitigate the dangers created by joinder, substantial prejudice has not been established.' *Dimmick*, 248 Or App at 178. Finally, the probable effectiveness of limiting

instructions to the jury is relevant to whether the defendant has established substantial prejudice. *Id.*"

259 Or App at 154-55 (third brackets in *Tidwell*).

Applying those principles here, we conclude that defendant failed to establish "substantial prejudice." That is so because, even if we assume that the evidence in each case was not mutually admissible in the other, the evidence in the cases was "sufficiently simple and distinct to mitigate the dangers created by joinder." *Dimmick*, 248 Or App at 178. As the trial court explained, the cases were "separate enough that the jury could make a determination very easily on one case, and on the other case and not be confused by the conduct."[6] In particular, the charges against defendant arose from different incidents that occurred at different times and places and involved different victims. Further, the trial court concluded that the potential prejudice identified by defendant could be mitigated through jury instructions and by limiting the state's cross-examination of defendant if he chose to testify in the case pertaining to J but not the case pertaining to C.[7] Thus, the trial court did not err in denying defendant's motion to sever the cases.

---

[6] *See State v. Roelle*, 261 Or App 705, 709, 323 P3d 567, *rev den*, 356 Or 397 (2014) ("The questions before the jury regarding the drug crimes were simple and separate from the questions regarding the person crimes, even though the drug crimes were alleged to have occurred on the same day as some of the person crimes."); *Tidwell*, 259 Or App at 155 ("Both [driving under the influence] charges involved discrete incidents on separate days, and the evidence in each case was uncomplicated and supported by separate witnesses."); *Dimmick*, 248 Or App at 179 ("The charges against defendant arose from four discrete incidents that occurred on four different days[.]"); *State v. Norkeveck*, 214 Or App 553, 560-61, 168 P3d 265 (2007), *rev den*, 344 Or 558 (2008) (reasoning that the evidence supporting charges concerning "sexual conduct toward a child under 12 years old" and "encouraging child sex abuse" was "sufficiently simple and distinct that the trier of fact would have been able to separately consider the charges").

[7] Defendant also contends that he was "deprived * * * of a fair trial under the Fourteenth Amendment" to the United States Constitution because the trial court "did not instruct the jury to separate its consideration of the evidence in each case," thus, permitting the state "to present defendant as a serial child molester who preyed on young members of his own family" and allowing the jury to "utilize the facts of each case as propensity evidence in the other." In other words, defendant contends that the trial court erred in denying the motion to sever the cases based on what actually occurred at trial.

We summarily reject those contentions in light of three salient considerations. First, defendant's appellate contentions are qualitatively different from the generic due process argument raised in the trial court described above at 266 Or App at 5. Second, as noted above, 266 Or App at 7, defendant did not request

We turn next to defendant's second assignment of error, in which he contends that, given *Leistiko*, the trial court plainly erred in instructing the jury. To qualify for plain error review, the purported error, among other things, must be "obvious"—that is, "not reasonably in dispute." *State v. Brown*, 310 Or 347, 355, 800 P2d 259 (1990). In determining whether an error is "plain," we do not refer to the law as of the time that the allegedly erroneous ruling was made but rather refer to "the law existing at the time the appeal is decided." *State v. Jury*, 185 Or App 132, 136, 57 P3d 970 (2002), *rev den*, 335 Or 504 (2003). Even if the error qualifies as plain error, we still must decide whether to affirmatively exercise our discretion to correct the error and identify the reasons for doing so. *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382, 823 P2d 956 (1991). For the reasons that follow, we conclude that, because *Leistiko's* application in the circumstances presented here is "reasonably in dispute," *Brown*, 310 Or at 355, the asserted instructional error is not reviewable as "plain error."

As pertinent here, the Supreme Court decided two cases following defendant's trial that bear on our review of his assignment of error. First, in *State v. Vanornum*, 354 Or 614, 628-29, 317 P3d 889 (2013), the court held that appellate review of purported instructional plain error is governed by the principles described in *Brown* and *Ailes*. Second, in *Leistiko*, the court explained that evidence of other crimes, wrongs, or acts is not admissible to prove a defendant's intent under OEC 404(3) unless either (a) the defendant has conceded the charged act or (b) the jury is instructed that it cannot consider the evidence unless it finds that the defendant committed the charged act. 352 Or at 185; *see also State v. Pitt*, 352 Or 566, 579, 293 P3d 1002 (2012) (restating principle).

---

jury instructions limiting its use of the evidence pertaining to each case. Finally, under *Tidwell*, our assessment of whether the trial court erred is predicated on the record that existed at the time that the court made its ruling and not what occurred at trial. *See Tidwell*, 259 Or App at 156 (acknowledging the dissent's concern "regarding how the trial actually played out in this case, given that the court did not give the precise limiting instructions to the jury that it had earlier anticipated would mitigate some of the dangers created by trying the two charges together," but concluding that the trial court did not err in denying severance based on the record that existed when it made its ruling).

Here, defendant contends that, under *Leistiko*, the trial court plainly erred in failing to instruct the jury in the case pertaining to J that it had to find that the conduct with J occurred before it could consider the evidence of defendant's "other acts"—*viz.*, the conduct pertaining to C—"to determine whether defendant's conduct with [J] was intentional." However, as we will explain, the application of the principle elucidated in *Leistiko* in this context is subject to reasonable dispute.

To explain why that is so, it is necessary to understand *Leistiko*'s procedural posture. As the Supreme Court explained,

> "the indictment [in *Leistiko*] joined three separate counts of first-degree rape. *See* ORS 132.560(1)(b)(A) (permitting the joinder of those counts for trial). At trial, the state did not argue that evidence relating to one count was admissible to prove another count; the state did not argue, for example, that evidence that defendant had forcibly compelled the first victim to engage in sexual intercourse was admissible to prove that he forcibly compelled the second victim to engage in that conduct. Rather, the only 'other crimes' evidence that the state sought to admit was the fourth woman's testimony, which it sought to admit to prove each of the three separate counts of first-degree rape. As the state acknowledges on review, to the extent that that inquiry turns on the similarity of the uncharged misconduct to the charged misconduct, the admissibility of the fourth woman's testimony may vary from one count to the next."

*Leistiko*, 352 Or at 178.

Ultimately, the court rejected the state's argument that, at a minimum, the fourth woman's testimony was admissible to prove that the defendant acted intentionally when he forcibly compelled the third victim to engage in sexual intercourse. In doing so, the court explained:

> "*[T]he doctrine of chances rests on the proposition that the defendant either concedes the act that requires proof of a mental state or the trial court instructs the jury not to consider uncharged misconduct evidence offered to prove intent unless and until the jury finds the act that requires proof of intent to have been done and is proceeding to determine intent.* Neither of those conditions occurred here. Defendant

never conceded that he forcibly compelled any of the three women to engage in intercourse with him, and the trial court neither admitted the uncharged misconduct evidence as conditionally relevant nor instructed the jurors to consider that evidence on the issue of intent only if they first found that defendant had forcibly compelled the women to engage in intercourse with him. To admit the fourth woman's testimony in the absence of one of those conditions poses * * * an unacceptable risk that the uncharged misconduct evidence is being admitted to prove the act, not the defendant's mental state."

*Id.* at 185-86 (citation omitted; emphasis added).

As noted, defendant's plain error proposition is predicated on the applicability of the following principle elucidated in *Leistiko*: Where a defendant has not conceded the charged act, the jury must be instructed that it cannot consider the evidence of other crimes, wrongs, or acts unless it finds that the defendant committed the charged act. Significantly, although the Supreme Court in *Leistiko* applied that principle with respect to the "fourth woman's" testimony, which was proffered to establish the defendant's *scienter* with respect to his conduct involving the three victims, the court did *not* apply that principle to the admission of evidence pertaining to each of the three victims, where the state had not argued that the evidence pertaining to one victim was admissible to prove the charges pertaining to any other victim. Similarly, in this case, the state did not rely on evidence of defendant's conduct involving one victim to prove the charges involving the other victim; that is, the state did not contend that the evidence pertaining to the case involving C was admissible to prove the case involving J. Thus, the circumstances here are not akin to those giving rise to *Leistiko*'s consideration and disposition with respect to the "fourth woman's" testimony. Given that material distinction, the correctness of defendant's efforts to extend *Leistiko* to this context is, at best, "reasonably in dispute." Accordingly, the asserted instructional error is not plain.

Finally, we turn to defendant's third and fourth assignments of error in which he contends that the court erred in awarding $1,300 in court-appointed attorney fees in each case in the absence of evidence of his ability to pay

them. As we have repeatedly held, "[a] court cannot impose fees based on pure speculation that a defendant has funds to pay the fees or may acquire them in the future." *State v. Pendergrapht*, 251 Or App 630, 634, 284 P3d 573 (2012); *see also* ORS 151.505(3) ("The court may not require a person to pay costs under this section unless the person is or may be able to pay the costs."); ORS 161.665(4) ("The court may not sentence a defendant to pay costs under this section unless the defendant is or may be able to pay them."). The state bears the burden of proving that a defendant is or may be able to pay attorney fees. *State v. Kanuch*, 231 Or App 20, 24, 217 P3d 1082 (2009).

Here, the record demonstrates that defendant had earned his GED, had attended college (but had not earned a degree), and had taken some college courses while imprisoned in another state. Further, the stepfather of one of the victims had helped defendant find a job at the stepfather's work after defendant returned to Oregon in 2010, and defendant's father testified that, at some point, defendant had had "odd jobs" and worked at a "call center."

Based on that record, the trial court found that defendant "does have an inability to pay" but that, "after he gets out of prison" in 175 months, "he'll be able to pay it off easily * * *." Stated differently, the trial court found that defendant does not have a present ability to pay attorney fees but that he will be able to pay them in the future. The evidence of defendant's educational background and his previous employability was sufficient to support the nonspeculative inference that, after his release from prison, defendant will be able to pay the attorney fee award of $1,300 in each case. Accordingly, the trial court did not err in imposing attorney fees in each case.

Affirmed.