Submitted July 30, 2014, affirmed March 18, 2015

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## MANFRED HUGH SCHNUR,
*Defendant-Appellant.*

Coos County Circuit Court
12CR0999; A153609

346 P3d 521

Peter Gartlan, Chief Defender, and Erik Blumenthal, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Peenesh H. Shah, Assistant Attorney General, filed the brief for respondent.

Before Duncan, Presiding Judge, and Lagesen, Judge, and Wollheim, Senior Judge.

LAGESEN, J.

**LAGESEN, J.**

A jury convicted defendant of one count of unlawful possession of methamphetamine, ORS 475.894.[1] Officers found the methamphetamine in a jewelry box in defendant's bedroom after defendant consented to a search of his home; defendant denied knowing that the methamphetamine was in the jewelry box. At trial, the court admitted evidence (in the form of statements by defendant to the arresting officer) that, the previous year, defendant had pleaded guilty to possessing methamphetamine that his girlfriend had left in his car; the court ruled that the evidence of that prior incident was admissible under OEC 404(3) to demonstrate that defendant knew that the methamphetamine was in the jewelry box.

On appeal, defendant assigns error to the trial court's admission of that evidence. Defendant argues that the court erred in determining that the prior incident was admissible to demonstrate his knowledge. In the alternative, although defendant did not request a limiting instruction in connection with that evidence, or object to the trial court's failure to deliver one, he contends that the trial court plainly erred by admitting it without instructing the jury, in accordance with *State v. Leistiko*, 352 Or 172, 282 P3d 857, *adh'd to as modified on recons*, 352 Or 622, 292 P3d 522 (2012), that it could not consider the evidence unless and until it found that defendant committed the charged act of possessing methamphetamine. We affirm.

## I. FACTS

This case arose when the Coquille Police Department received reports of possible drug activity at defendant's

---

[1] That statute, part of Oregon's Uniform Controlled Substances Act, provides, in relevant part:

"It is unlawful for any person knowingly or intentionally to *possess* methamphetamine unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of professional practice, or except as otherwise authorized by ORS 475.005 to 475.285 and 475.752 to 475.980."

ORS 475.894(1) (emphasis added). To "possess" means "to have physical possession or otherwise to exercise dominion or control over property." ORS 161.015(9); *see State v. Daniels*, 348 Or 513, 519, 234 P3d 976 (2010).

house. Aware that defendant was on probation for the possession of methamphetamine, Officer Webley and Detective Moore, of the Coos County Sheriff's Office, visited defendant at his home and asked him about the reports. Moore informed defendant that they were concerned about methamphetamine in particular; defendant told the officers that he was on probation after pleading guilty to possessing methamphetamine that "someone else"[2] had left in his car. Moore and Webley asked defendant if he would consent to a search of his house, and he agreed, telling the officers that "a female friend" might have left some marijuana in the house. The search ultimately uncovered not marijuana, but the methamphetamine in the jewelry box in defendant's bedroom, and defendant was charged with unlawful possession of that methamphetamine.

Before trial, defendant moved *in limine* to exclude evidence of a portion of his statement to the officers regarding his prior incident of methamphetamine possession.[3] In particular, defendant sought to exclude evidence that he attributed ownership of the drugs involved in the prior offense to another person. He did so on the ground that the admission of that portion of the statement would be prejudicial, because his defense was that someone else had left the methamphetamine in the jewelry box without his knowledge, and the statement "might tend to make the jury think, 'Well, he's just making another excuse.'" Defendant explained that he was "not objecting to evidence of the prior conviction *per se*, or that [he] admitted to having such a conviction," acknowledging that the evidence might be admissible both for impeachment purposes and to show that defendant was on formal probation in connection with the prior conduct.

The state opposed the motion, arguing that the evidence should be admitted to show that defendant was lying

---

[2] At trial, defendant testified that the "someone else" was his girlfriend, McMullen.

[3] At that point in time, defense counsel thought that defendant had a conviction for unlawful possession of methamphetamine. Later, defense counsel explained to the court that defendant had pleaded guilty to possessing methamphetamine, but that there was no conviction as of the time of trial because defendant was "currently on Conditional Discharge" in the previous case.

if he testified, as anticipated, that someone else had placed the methamphetamine in the jewelry box without his awareness. The prosecutor asserted that the evidence went "to the veracity" of defendant's "story" that the methamphetamine in the jewelry box had been put there by someone else, because it showed that defendant "gives the same excuse, for the same defense, for both of these cases." The trial court reserved ruling on the motion, and directed the parties to "stay away from the topic" during opening statements and the state's case-in-chief.

The state again raised the issue of the admissibility of the statement after defendant suggested that his girlfriend, McMullen, had planted the methamphetamine in his bedroom, likely when, on a recent visit, she went into his room to play with a litter of Chihuahua puppies that defendant was breeding. Although the state continued to argue that the evidence bore on the "credibility" of defendant's story that the methamphetamine at issue in the current case belonged to McMullen, the state also advanced a new theory of admissibility: that the evidence was admissible under OEC 404(3) to prove defendant's knowledge of the methamphetamine in the jewelry box.[4] When the court asked defendant to respond "extensively" to that argument, defendant, through counsel, responded that he did not "have anything extensively," noting that his arguments were contained in his written motion *in limine*. Defendant did not dispute that the evidence was relevant to show knowledge of the methamphetamine, but argued that the evidence did not have "that much evidentiary force," in the light of the fact that defendant had pleaded guilty to the previous charge and did not advance "the same defense he's advancing now." Although in the written motion *in limine*, defendant had conceded that the evidence of the prior incident would be admissible for impeachment purposes, defendant changed

_____

[4] Put another way, the state had previously sought to admit defendant's statement as evidence of a lie, that is, as evidence that defendant makes up excuses when caught with methamphetamine. The state's new theory of admissibility treated defendant's statement as a truthful statement about the circumstances of the prior incident, to support the inference that, in the state's words in its brief on appeal, "defendant and his girlfriend have a relationship in which she leaves methamphetamine in his possession and that defendant knowingly accedes to that arrangement."

positions on that point and argued that the evidence was not admissible for impeachment purposes in the light of the fact that, notwithstanding defendant's guilty plea, "[t]here hasn't been a conviction at this point."

After hearing testimony from Moore on what defendant had reported about the circumstances of the previous incident, the trial court ruled that the prior incident and defendant's description of it—including both the prior act of possession itself and the fact that, according to defendant, the methamphetamine had actually belonged to his girlfriend—was similar enough, and close enough in time, to the charged offense that evidence of it was admissible under OEC 404(3) for the "very limited purpose[]" of showing defendant's knowledge of the methamphetamine in the jewelry box. The state then introduced the evidence through its cross-examination of defendant, during which defendant testified that he had told Moore that he had previously pleaded guilty to possessing methamphetamine that McMullen had left in his car, just as she had left the methamphetamine in the jewelry box in the instant case. Neither party requested that the court give any type of limiting instruction in connection with the evidence, and the court did not give any such instruction.

Both the state and defendant made use of the evidence in closing argument. The state employed the evidence to argue that, when defendant is caught with methamphetamine, he lies and says that it belongs to someone else, supporting the inference that defendant was lying when he testified that his girlfriend had left the methamphetamine in the jewelry box:

"Think about the statements that were made by [defendant]. They talked about his fairly recent conviction—guilty plea for a Possession of Meth charge.

"And, in that context, [defendant] said that someone had left that meth there. That somebody else had left that behind. Think about that. During the voir dire process, I asked, 'Whose[sic] ever been fed the same line over and over again?'

"The chance that [defendant] just happened to be found with methamphetamine on his person or under his control, it's not probable. But, he falls back on that excuse.

"* * * * *

"Well, and when [Moore] finds this item, he shows it to [defendant]. And, [defendant] just says, 'Oh, that must be one of my lady friends.'

"Well, what does [defendant] know? [Defendant] knows the consequences. He's plead[ed] guilty to a charge like this before.

"* * * * *

"And the fact is, he's falling back on the same excuse—that somebody else left that. He's told you, through [Moore]—by even himself—that he's used that excuse before. And, here he is trying to use the excuse again. I ask you not to fall for [defendant's] lie."

Defendant did not object to that line of argument.[5] Defendant, in turn, used the evidence to argue that the prior incident demonstrates that defendant admits to possessing his girlfriend's methamphetamine when he is aware of it, and, for that reason, the jury should credit defendant's testimony that he did not know about the methamphetamine in the jewelry box:

"Unlike, for example, this 2011 incident where he pleaded guilty because—even though it belonged to somebody else—he was aware that it was there. He's not providing that—he wasn't providing an excuse any way shape or form, uh, on that date, as the State would have you believe.

---

[5] We note that the state's use of the evidence of the prior incident and defendant's description of it was not for the purpose for which the trial court admitted the evidence. Although the trial court admitted the evidence as probative of defendant's knowledge of the methamphetamine in his bedroom, the state used the evidence differently: as a form of propensity evidence. That is, the state used the evidence to show that defendant has a propensity to lie when caught with drugs—suggesting that defendant was lying when he blamed his girlfriend for planting the methamphetamine in his jewelry box. However, as noted, defendant did not object to the prosecutor's closing argument on the ground that it conflicted with the trial court's ruling admitting the evidence for the limited purpose of showing knowledge, and he does not raise the issue on appeal.

We also note, as described further in the body of this opinion, that defendant used the evidence in much the same way, arguing that it demonstrated (contrary to the state's argument) that defendant has a propensity to tell the truth when he is caught with methamphetamine. By using the evidence to show that defendant "step[s] up to the plate" and accepts responsibility for methamphetamine when he knows about it, defendant suggested that he was telling the truth when he testified that he did not know about the methamphetamine in his jewelry box.

He stepped up to the plate, was aware, 'I'm pleading guilty.' Here today, he's telling you he didn't know."

The jury convicted defendant, and defendant appealed.

## II. STANDARDS OF REVIEW

The issues on appeal are whether the trial court erred by admitting the evidence (in the form of defendant's statement) that he had previously pleaded guilty to possessing methamphetamine that his girlfriend had left in his car under OEC 404(3) and, if not, whether the trial court plainly erred when it failed to instruct the jury that it could not consider that evidence unless it found that defendant had committed the *actus reus* of the charged offense of possession of a controlled substance. We review the trial court's ruling regarding the admissibility of the evidence under OEC 404(3) for legal error. *State v. Arnold,* 262 Or App 22, 23, 324 P3d 538 (2014) (citing *State v. Garrett,* 350 Or 1, 6, 248 P3d 965 (2011)). We review the unpreserved claim of instructional error to determine whether any error is "plain" and, if so, whether to exercise our discretion to correct that error. *See State v. Gensler,* 266 Or App 1, 10, 337 P3d 890 (2014), *rev den,* 356 Or 690 (2015) (describing framework for reviewing an unpreserved claim of error).

## III. ANALYSIS

On appeal, defendant makes two arguments as to why the trial court erred in admitting evidence (in the form of defendant's statement to Moore) that defendant previously had pleaded guilty to possessing methamphetamine that belonged to his girlfriend. Defendant first argues that the prior incident was too dissimilar to the incident at issue in the case to be probative of defendant's knowledge.[6] Alternatively, defendant argues that we must reverse because the trial court did not instruct the jury that it could not consider the evidence of the prior incident until it had

---

[6] Defendant does not dispute that where, as here, a defendant makes "a statement or confession" of a prior crime or bad act, that act and its attendant circumstances may fall within the scope of OEC 404(3). *See State v. Allen,* 301 Or 569, 575, 725 P2d 331 (1986). Rather, defendant argues that, on the particular facts of this case, defendant's previous act of possession and its attendant circumstances was insufficiently similar to be admissible.

found that defendant committed the act underlying the offense, as required by *Leistiko*.

We reject defendant's first argument as unpreserved. Defendant's argument on appeal differs significantly from the arguments that he made to the trial court. Defendant now appears to argue that all evidence of the prior incident, including the evidence that the prior incident involved his girlfriend's methamphetamine, was not similar enough to the present incident to be admissible to show defendant's knowledge. That is not the same argument that defendant presented to the trial court; before that court, defendant did not seek to exclude the evidence of the incident as a whole, but only the evidence that defendant attributed ownership of the methamphetamine to someone else.

Moreover, when defendant was asked to respond to the state's argument as to why the evidence was admissible to show defendant's knowledge under the doctrine of chances, defendant did not dispute that the prior incident was probative of defendant's knowledge, but argued simply that the evidentiary value of the prior incident was weak. In other words, defendant did not give the trial court a meaningful opportunity to consider this case in the light that it is being presented to us.

Defendant's second argument is that the trial court plainly erred by admitting the evidence related to his prior unlawful possession of methamphetamine without giving the jury a limiting instruction under *Leistiko*. That is, defendant contends that the court plainly erred when it did not instruct the jury that it could not consider the evidence unless it first found that defendant had committed the charged act of possessing the methamphetamine found in his bedroom. *See Gensler*, 266 Or App at 10 (articulating formulation of *Leistiko* limiting instruction).

We conclude that the trial court did not plainly err when it omitted to deliver a limiting instruction under *Leistiko*. As an initial matter, the failure to deliver a *Leistiko* limiting instruction is not *categorically* plain error but, instead, turns on the particular facts of the case. *Gensler*, 266 Or App at 11-12 (claim of instructional error under *Leistiko* was "'reasonably in dispute'" on particular facts of

the case and, consequently, not plain error). In particular, "[a]n error does not qualify as plain error if the record contains a competing inference that the party may have had a strategic purpose for not objecting," provided that inference of a strategic purpose is "plausible." *State v. Salas-Juarez*, 264 Or App 57, 64, 329 P3d 805, *rev den*, 356 Or 575 (2014). Here, the record allows for a "plausible" inference of a strategic reason for defendant's decision not to object to the omission of a limiting instruction with respect to the evidence of his prior act of possessing methamphetamine. As noted, defendant relied on that evidence in closing argument, contending that it demonstrated that he is the kind of person who "step[s] up to the plate" and admits to possessing drugs, even when those drugs belong to someone else, when he has knowledge of those drugs. Defendant's decision to use the evidence as affirmative support for his defense theory supports a "plausible" inference that defendant may have strategically chosen not to request a limiting instruction and not to object to the trial court's omission of one.[7] Had the court delivered the *Leistiko* instruction, it would have interfered with defendant's ability to deploy the evidence in the way that he did.

Affirmed.

---

[7] Defendant's case was tried after the Supreme Court decided *Leistiko*, allowing for the possibility that defendant's lawyer affirmatively considered whether he wanted a *Leistiko* limiting instruction and concluded that he did not.