Argued and submitted June 18, 2014, remanded for resentencing; otherwise affirmed July 22, 2015

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JEREMY LANCE HORNER,
*Defendant-Appellant.*

Lane County Circuit Court
201204868; A152003

356 P3d 111

David O. Ferry, Senior Deputy Public Defender, argued the cause for appellant. With him on the opening brief was Peter Gartlan, Chief Defender, Office of Public Defense Services. With him on the supplemental brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section.

Susan G. Howe, Senior Assistant Attorney General, argued the cause for respondent. With her on the briefs were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Duncan, Presiding Judge, and Sercombe, Judge, and Wollheim, Senior Judge.*

------------
* Sercombe, J., *vice* Edmonds, S. J.

SERCOMBE, J.

**SERCOMBE, J.**

Defendant appeals his convictions for various property crimes, including two counts of identity theft, and crimes associated with flight from police. In his opening brief, defendant argues that, under OEC 404(3)[1] and *State v. Leistiko*, 352 Or 172, 282 P3d 857, *modified on recons*, 352 Or 622, 292 P3d 522 (2012), the trial court erred in admitting evidence of his nine prior identity theft convictions to prove that he had an intent "to deceive or to defraud" in this case, because he did not concede that he "possesse[d] * * * the personal identification[s] of [others]," ORS 165.800(1), and the court did not otherwise instruct the jury that it first had to find that defendant possessed the identifications before it considered the identity theft convictions as evidence of intent. After oral argument, the Supreme Court, in *State v. Williams*, 357 Or 1, 15, 346 P3d 455 (2015), concluded that OEC 404(4) "supersede[s] OEC 404(3) in criminal cases, except * * * as otherwise provided by the state or federal constitutions."[2] The court further concluded that, under OEC 404(4), evidence of a criminal defendant's other crimes, wrongs, or acts may be admitted so long as (1) it is relevant under OEC 401, and (2) as required by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, "a trial court determines whether the risk of unfair prejudice posed by the evidence outweighs its probative value under OEC 403." *Id.* at 24.[3] In a supplemental brief,

---

[1] OEC 404(3) provides:

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

[2] OEC 404(4) provides:

"In criminal actions, evidence of other crimes, wrongs or acts by the defendant is admissible if relevant except as otherwise provided by:

"(a) [OEC 406 to 412] and, to the extent required by the United States Constitution or the Oregon Constitution, [OEC 403];

"(b) The rules of evidence relating to privilege and hearsay;

"(c) The Oregon Constitution; and

"(d) The United States Constitution."

[3] Because *Williams* was a prosecution for child sexual abuse, the court limited its holding under the Due Process Clause to child sexual abuse cases; the

defendant maintains that, under the framework announced in *Williams*, the challenged evidence was inadmissible without a *Leistiko* jury instruction. As we explain below, we conclude that defendant's argument under *Leistiko*—a decision announced after his trial—was unpreserved and, given the "significant change in the law" announced in *Williams*, 357 Or at 20, defendant's claim that the trial court was required to give the *Leistiko* instruction to properly admit evidence of his identity theft convictions is not cognizable as plain error. We further conclude that the trial court erred in modifying defendant's sentence outside his presence, because the court denied defendant "earned time" on each felony sentence in the written judgment, even though the court had originally announced that he was eligible for earned time after the first 144 months of his sentence. We therefore remand for resentencing and otherwise affirm.[4]

We set out the pertinent facts, which were undisputed at trial, except as noted. Just after 7:00 a.m. on March 7, 2012, the owner of a truck, Woolley, reported to police that the truck had been stolen from his driveway in Eugene. Woolley had discovered that the truck was gone after one of his employees called and said that he had seen someone other than Woolley driving the truck in a convenience store parking lot. At trial, the employee identified defendant as the driver of the stolen truck.

An officer soon spotted the truck in a restaurant parking lot. After the officer pulled into the parking lot, defendant drove over a curb and sped away. (The officer testified that defendant drove away after the officer activated his lights and siren, but defendant testified that he never saw lights or a siren and thought he was being chased by someone who he recently had fought in a bar.) The officer observed defendant stop, drop off a female passenger, who was never identified, and speed away again.

court noted that, in other cases, it "might be persuaded" that due process "also precludes the admission of 'other acts' evidence to prove propensity." 357 Or at 17. In this case, a prosecution for identity theft, defendant does not argue that the Due Process Clause imposes different requirements than those set out in *Williams*, and we express no opinion on that question.

[4] We reject without published discussion defendant's fourth, fifth, sixth, and seventh assignments of error.

As defendant continued to flee, he reached speeds of over 70 miles per hour. At one point, he passed a "do not enter" sign and drove onto the Beltline Highway against traffic. Defendant passed several other drivers and at least one person walking along the road. Eventually, he ended up on a narrow, dead-end street, with the same officer in pursuit.

After he reached the dead-end street, defendant drove the truck into two parked minivans, and one of the minivans hit a nearby house. Defendant abandoned the truck, proceeded on foot, and lost the jacket he was wearing as he ran. (The officer testified that he told defendant that he was under arrest, yelled for him to stop, and grabbed at the jacket, which slipped off as defendant ran; defendant denied that any of that occurred.) Woolley's loaded handgun was found in the jacket pocket. Defendant was apprehended a short time later, just a few blocks away, by other officers who had been setting up a perimeter.

It was later discovered that the property found in the truck matched property missing from two cars near where the truck had been stolen: A GPS unit, other property, and a wallet containing the personal identifications of a husband and wife were missing from one car; a car charger, mailbox key, change, and garage door opener were missing from another. A nearby garage—the one that matched the opener—was found open, and a $100 Wal-Mart gift card, car charger, and sunglasses were missing from a car parked in the garage. In the same neighborhood, a truck and trailer parked on the street near Woolley's house had been sideswiped; paint found on the damaged truck and trailer matched the color of Woolley's truck.

At 4:35 a.m. on March 7, defendant used a $100 gift card at a Wal-Mart. To make his purchase, defendant provided his birthdate and signature. Surveillance video recorded defendant making the purchase and climbing into the sunroof of the truck in the parking lot.

Defendant was charged with a number of crimes, including two counts of identity theft[5] related to the personal

---

[5] ORS 165.800(1) provides that "[a] person commits the crime of identity theft if the person, with the intent to deceive or to defraud, obtains, possesses,

identifications of the husband and wife that were found in the truck, and, at trial, the state moved *in limine* to admit evidence that defendant had been convicted of nine counts of identity theft as part of four separate criminal episodes. The state argued that that evidence was relevant to show that defendant acted with the intent to defraud in this case. Defendant objected, arguing that admission of defendant's prior identity theft convictions "would inject the worst kind of character evidence" into the case, and that, under "the balancing required by [*State v. Johns*, 301 Or 535, 725 P2d 312 (1986)]," that evidence "would blacken [defendant's] character." Defendant asked the court to "hear the circumstances rather than making a ruling now," and the court agreed to defer a ruling until after opening statements.

The court revisited the admissibility of evidence of defendant's identity theft convictions during the state's case-in-chief. The state argued that that evidence met the five criteria set out in *Johns* and was therefore admissible to show defendant's intent to deceive or defraud. Defendant responded that the prior crimes were not sufficiently similar to the charged crimes under the criteria set out in *Johns* and asserted that, if the court found that they were sufficiently similar, the probative value of the evidence was outweighed by its unfair prejudice.

The court granted the state's motion to admit the evidence, concluding that "all the elements under *Johns* have been met." Further, "with regard to the balancing test," the court explained that it did "not believe that there [was] any unfair prejudice involved in this," noting that the state "bears the burden of proof on all the elements and one of the elements is intent" and that the evidence of other acts "goes to intent." The state and defendant later stipulated to his prior convictions. The jury heard testimony from four witnesses for the state who described the prior identity thefts, as well as the parties' stipulation to the resulting convictions.[6]

---

transfers, creates, utters or converts to the person's own use the personal identification of another person."

[6] A detective testified that, in 2001, he investigated a theft of a credit card from Blume, and the detective spoke to defendant, who admitted to stealing Blume's credit card from Blume's car. Defendant was convicted of two counts

Defendant testified that, on the night before the car was stolen, he drank beer with a man and woman he met, the man had asked defendant if he would drive the man's truck to take "his old lady" to a friend's house, and defendant agreed to drive the truck. He testified that he was unaware that it was stolen and did not have any connection to any of the personal property or identifications found in the truck. Although defendant admitted that he possessed a gift card, he stated that the gift card was given to him (in exchange for methamphetamine) by the same man who loaned him the truck.

The court also gave two limiting instructions related to the jury's assessment of the identity theft convictions and defendant's several other convictions (which were admitted for impeachment purposes when defendant testified):

"If you find the defendant has been previously convicted of a crime, you may consider this conviction only for its bearing, if any, on the believability of the defendant's testimony. Specifically, you may not use this evidence for the purpose of drawing the inference [that] because the defendant was convicted of a previous crime, the defendant may be guilty of the crime charged in this case.

"However, the evidence that the defendant has been convicted of identity thefts may also be used to determine whether the defendant possessed personal identification of another with the intent to deceive or defraud."

Defendant did not object to those instructions. Ultimately, the jury found defendant guilty of all 26 counts it considered.[7]

---

of identity theft. A witness testified that, in 2005, her purse (containing credit cards, identification, and a checkbook) was stolen when her family accidentally left her garage door open. Defendant was convicted of identity theft. A detective testified that, in 2005, he investigated the opening of a bank account. Defendant, identified as the account holder, deposited fraudulent checks (including checks obtained during burglaries or unlawful entry into vehicles) into the account, and then made withdrawals from the same account. Defendant was convicted of five counts of identity theft. A witness testified that his car was broken into in 2010 and numerous pieces of identification were missing. Defendant was convicted of identity theft.

[7] First, defendant was convicted of several crimes associated with unlawfully entering the garage, theft of personal property and identifications, use of Woolley's truck, and damaging the truck and trailer: first-degree burglary; two counts of second-degree theft; two counts of identity theft; unauthorized use of a vehicle; second-degree criminal mischief; and failure to perform duties of a driver

On appeal, in his opening brief, defendant argues that the trial court erred in admitting evidence of his prior convictions for identity theft to prove that he had the intent to deceive or defraud. He asserts that "other acts" evidence "is not admissible under OEC 404(3) to prove intent unless defendant committed the act" and invokes *Leistiko*, a case, like this one, where the state sought to introduce evidence of prior acts as relevant to the defendant's intent under the doctrine of chances theory of relevance—*i.e.*, evidence of the defendant's other acts showed that, because the defendant had performed those acts with a particular intent many times in the past, that makes it more likely that he had that same intent when he performed the charged act. In *Leistiko*, the Supreme Court reasoned that "other acts" evidence is not admissible to prove a defendant's intent under the doctrine of chances unless "'the act itself is assumed to be done— either because (as usually) it is conceded, or because the jury is instructed not to consider the evidence from this point of view until they find the act to have been done and are proceeding to determine the intent.'" 352 Or at 184 (quoting John Henry Wigmore, 2 *Evidence* 302, 245 (Chadbourne rev 1979)) (emphasis omitted). Defendant claims that the trial court erred when it admitted evidence of his identity theft convictions without instructing the jury that it could not consider that evidence as to intent to deceive or defraud until it first found that defendant had, in fact, possessed the identifications.

Before addressing those claims further, we must first address preservation. *See State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000) (explaining that, to preserve an argument for appellate review, "a party must provide the trial court with an explanation of his or her objection that is specific enough to ensure that the court can identify its

___

when property is damaged. Second, defendant was convicted of several crimes stemming from his flight from police in the truck: felony fleeing or attempting to elude a police officer in a vehicle; reckless driving; and six counts of recklessly endangering another person. Third, defendant was convicted of several crimes associated with his damage to the vans and house, his flight on foot, and his taking of Woolley's firearm: three counts of first-degree criminal mischief; second-degree criminal mischief; two counts of failure to perform duties of a driver when property is damaged; third-degree escape; fleeing or attempting to elude a police officer on foot; felon in possession of a firearm; and first-degree theft.

alleged error with enough clarity to permit it to consider and correct the error immediately, if correction is warranted"). At trial, defendant argued, at length, that the prior identity theft crimes were not sufficiently similar to meet the requirements of *Johns* and that the evidence was unduly prejudicial. Defendant did not present an argument forecasting the Supreme Court's ruling in *Leistiko*, which was issued after his trial. Because the argument defendant advances on appeal is categorically different from the one he advanced in the trial court, which was grounded in controlling cases at the time, we conclude that he did not preserve his appellate argument.[8]

We may, however, review defendant's unpreserved assignment of error as one "apparent on the record" if (1) the error is one of law; (2) it is apparent, that is, it is "obvious, not reasonably in dispute"; and (3) the error appears on the record such that "[w]e need not go outside the record or choose between competing inferences to find it, and the facts that comprise the error are irrefutable." *State v. Brown*, 310 Or 347, 355, 800 P2d 259 (1990); *see State v. Jury*, 185 Or App 132, 137, 57 P3d 970 (2002), *rev den*, 335 Or 504 (2003) (explaining that "plain error" is determined by reference to the law existing at the time the appeal is decided). If those requirements are met, we must determine whether it is appropriate to exercise our discretion to correct the error,

---

[8] In some cases in a similar procedural posture—that is, where the defendant's trial was held before the Supreme Court decided *Leistiko*—we have concluded that the defendant's arguments at trial were sufficient to preserve his appellate arguments based on principles announced in *Leistiko*. *Compare State v. Hutton*, 258 Or App 806, 810, 817, 311 P3d 909 (2013) (concluding that the defendant preserved his appellate argument, based on principles announced in *Leistiko*, by arguing at his pre-*Leistiko* trial that "other acts" evidence would only be useful to show propensity because "the defense is not that it was somehow accidental, it's that it did not happen, in fact" and by pointing to the defendant's opening statement that he did not commit the charged act (internal quotation marks omitted)), *with State v. Jones*, 258 Or App 1, 5, 308 P3d 347 (2013) (concluding that arguments under *Leistiko* were unpreserved—and reviewing for plain error—where the defendant's contention at his pre-*Leistiko* trial was that the disputed evidence "was inadmissible because it did not satisfy certain of *Johns*'s requisites," not that "the evidence was categorically admissible because *** his theory at trial was that *** the crimes never took place" (internal quotation marks omitted)). But here, defendant argued that the evidence did not satisfy *Johns* and was unduly prejudicial; he did not make it clear to the trial court that the other acts evidence should not be admitted because he had not conceded the charged act.

as explained in *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382, 823 P2d 956 (1991). We have applied that plain-error framework where, as here, the defendant was convicted in a pre-*Leistiko* trial and claimed on appeal that the trial court erred in admitting prior acts evidence "without the requisite qualifying instruction" later announced in *Leistiko. See, e.g., State v. Jones*, 258 Or App 1, 8-9, 308 P3d 347 (2013) (concluding that trial court plainly erred and exercising discretion to correct the error).

Since *Leistiko*, however, the law surrounding "other acts" evidence has shifted yet again. After the parties filed their briefs in this case, the Supreme Court issued its decision in *Williams*, where the question was whether evidence that the defendant was found in possession of two pairs of children's underwear was admissible in a prosecution for first-degree sexual abuse for conduct involving a child. 357 Or at 3-4. In answering that question, the Supreme Court considered the state's contention that "OEC 404(4) supersedes OEC 404(3) and makes relevant 'other acts' evidence admissible for *all* purposes," *i.e.*, even to show a defendant's character and propensity to act accordingly. *Id.* at 5 (emphasis in original). After reviewing the text, context, and legislative history of OEC 404(4), the court concluded that "OEC 404(4) * * * supersede[s] OEC 404(3) in criminal cases, except * * * as otherwise provided by the state or federal constitutions." *Id.* at 15.

The court then considered what limits the federal constitution, specifically the Due Process Clause, might place on the admission of other acts evidence. Drawing from historical practice and the fundamental principles embodied in the Due Process Clause, the court concluded that, "in a prosecution for child sexual abuse, * * * subjecting proffered 'other acts' evidence to OEC 403 balancing is a due process requirement."[9] *Id.* at 18. The court explained that

---

[9] Starting from the premise that "'historical practice' is the primary guide for determining whether an evidentiary rule is so fundamental as to be embodied in the federal constitution," *Williams*, 357 Or at 17, the court observed a distinction between historical practices for admitting evidence in child sexual abuse cases and cases where the defendant is charged with some other crime:

"In [*United States v. LeMay*, 260 F3d 1018 (9th Cir 2001)], the Ninth Circuit considered the 'historical practice' prohibiting the use of 'other acts' to prove

the Due Process Clause "at least requires that, on request, trial courts determine whether the probative value of the evidence is outweighed by the risk of unfair prejudice." *Id.* at 19. The court held that "OEC 404(4) makes 'other acts' evidence admissible if it is relevant under OEC 401 and admissible under OEC 403." *Id.* at 20.

Applying that framework, the court concluded that evidence that the defendant possessed the underwear was logically relevant under OEC 401 because the evidence permitted the inference that the defendant was an adult who had a sexual interest in children, which, in turn, was probative of whether the defendant had a sexual purpose in engaging in the charged conduct. *Williams*, 357 Or at 21-23. Finally, because the trial court had admitted the evidence after conducting the balancing under OEC 403, and because the defendant did not contend that the trial court's OEC 403 analysis was erroneous, the court ruled that the "other acts" evidence was properly admitted.

Both parties address the application of *Williams* in supplemental briefs. Defendant recognizes that, in criminal cases, "OEC 404(4) makes 'other acts' evidence admissible if it is relevant under OEC 401 and admissible under OEC 403," *Williams*, 357 Or at 20, but he asserts that his *Leistiko* "arguments, and the law on which they are based, are not altered by the *Williams* decision." First, defendant emphasizes that, under OEC 404(4), evidence is admissible only if the court finds "that the evidence [is] 'logically relevant.'" He argues that, "[a]lthough *Leistiko* was primarily focused on OEC 404(3), and *Williams* held that OEC 404(4) abrogated OEC 404(3), *both* rules require that the proponent of

---

the charged crime and concluded that 'the general ban on propensity evidence has the requisite historical pedigree to qualify for constitutional status.' 260 F3d at 1025. *If this were a case in which defendant had been charged with crimes other than child sexual abuse, we might be persuaded that due process incorporates that historical practice and therefore not only requires the application of OEC 403, but also precludes the admission of 'other acts' evidence to prove propensity.* However, in this case, defendant is charged with child sexual abuse, and the historical practice with respect to such charges is not as clear."

*Id.* (emphasis added). The court therefore limited its holding to charges for child sexual abuse and explained that it "need not, and [did] not, decide whether OEC 404(4) may be constitutionally applied in other types of prosecutions." *Id.* at 20 n 19.

evidence first establish its relevance." (Emphasis in original.) And, in defendant's view, "[u]ntil the jury first determined that defendant *knew* the items were in the vehicle, evidence bearing only on secondary questions regarding what defendant intended to do with the items were *not yet relevant.*" (First emphasis in original; second emphasis added.) Second, defendant argues that, under *Williams*, evidence must be excluded when its probative value is substantially outweighed by the risk of unfair prejudice. 357 Or at 18-20. Defendant contends that, because the state failed to establish that defendant's prior identity theft crimes were relevant to intent under the doctrine of chances, that evidence "lack[ed] probative value *and* [was] unfairly prejudicial."[10] (Emphasis in original.)

The state responds that "defendant incorrectly characterizes the *Leistiko* rule as one strictly of relevancy, rather than of admissibility." The state agrees with defendant to the extent he argues that *Williams* "does not alter the definition of relevant evidence in OEC 401," but the state contends that *Leistiko* was not "a case determining the *relevancy* of proffered prior misconduct evidence." (Emphasis in original.) *Leistiko* was concerned with OEC 404(3), the state suggests, and OEC 404(3) "does not bear on the relevancy determination of specific evidence," it "simply identifies a type of evidence that—although relevant—is inadmissible based on a specific application of OEC 403." The state further argues that, because "evidence of defendant's prior conviction of identity theft was highly relevant and specific to the question of whether he had the intent to deceive or defraud with the charged victims' stolen pieces of identification," the trial court's admission of the prior identity theft crimes "easily passes muster under traditional OEC 403 balancing and thus necessarily satisfies due process." On that issue, the state notes that the trial court provided a limiting jury instruction that restricted the jury's use of defendant's prior identity theft convictions, even if that instruction was "not an exact recitation of the limiting jury instruction the Court suggested in *Leistiko*."

---

[10] Defendant does not argue that the analytical framework set out in *Williams* with respect to prosecutions for child sexual abuse should apply differently in this case. We express no opinion on that question.

In addressing defendant's claim of plain error, we must consider whether the "legal point" underlying that claim is "obvious, not reasonably in dispute" under the law as it now exists. *Brown*, 310 Or at 355; *see Jury*, 185 Or App at 137. We emphasize that the error defendant claimed under *Leistiko* remains the same after *Williams*: The trial court erred by admitting defendant's prior identity theft convictions without instructing the jury that it must first find that defendant possessed the identifications of others before considering whether he had the intent to deceive or defraud.[11] Because the two "legal points" defendant advances in support of his claim of error are subject to reasonable dispute, we conclude that the asserted error is not obvious and therefore not plain.

First, there is at least a reasonable dispute as to defendant's claim that, without a *Leistiko* jury instruction, the evidence here was "not yet relevant" to intent under the doctrine of chances.[12] In *Leistiko*, the court explained that the trial court erred in admitting uncharged misconduct evidence to prove intent under the doctrine of chances where the defendant did not concede doing the charged act and the court "neither admitted the uncharged misconduct evidence as conditionally relevant nor instructed the jurors to consider that evidence on the issue of intent only if they first found that the defendant had [committed the charged act]."

[11] In *State v. Pitt*, 352 Or 566, 580-81, 293 P3d 1002 (2012), the court explained that, if the defendant does not concede the charged act, other acts evidence offered to prove intent on the doctrine of chances theory should not be admitted unless the court gives a *Leistiko* jury instruction and the state "introduce[s] evidence at trial sufficient to permit the factfinder to find beyond a reasonable doubt that, in fact, defendant had [committed the act], as charged." In this case, defendant does not argue that the trial court erred in admitting the evidence of defendant's identity theft convictions because the state failed to present sufficient evidence that defendant possessed the identifications, as charged. Though the state moved to admit that evidence *in limine*, the court ruled on the state's motion to admit that evidence after the state had presented evidence of defendant's involvement in the alleged crimes.

[12] Evidence is relevant under OEC 401 if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The state offered evidence of defendant's past crimes of identity theft as relevant to defendant's intent on a doctrine of chances theory, and the trial court determined the probative value of the evidence, under OEC 401, by examining the similarity of other acts to the charged act under factors announced in *Johns*. Defendant does not contend that the evidence here was not logically relevant under that analysis.

352 Or at 186. But in announcing that rule, the court started from the proposition that OEC 404(3) made propensity evidence categorically inadmissible. *See Leistiko*, 352 Or at 180 n 6 (so stating and noting that the state did not argue that "propensity evidence is relevant and thus admissible under OEC 404(4)"). And the court later explained that, without the defendant's concession as to the charged act or a *Leistiko* jury instruction, there was "a risk that the jury would use the [other acts] evidence for an impermissible propensity purpose—*i.e.*, to decide that, because [the] defendant had committed the [other] acts, his character was such that he again would act in the same manner and commit the charged acts." *State v. Pitt*, 352 Or 566, 582, 293 P3d 1002 (2012). Given the starting point of the court's decision in *Leistiko* (the ban on propensity evidence under OEC 404(3)) and the court's explanation of why that instruction was necessary (to avoid propensity-based reasoning), it is not obvious here that, without the jury instruction described in *Leistiko*, the evidence offered for intent on a doctrine of chances theory was "not yet relevant," as defendant asserts.[13]

Second, we do not agree with defendant that the trial court committed *obvious* error in admitting the identity theft evidence because, without a *Leistiko* instruction, the probative value of that evidence was substantially outweighed by the risk of unfair prejudice. Defendant's argument rests on the categorical proposition that, when a defendant does not concede the charged act and the trial court does not give a *Leistiko* instruction, evidence offered on a doctrine of chances theory necessarily "lacks probative value *and* is unfairly prejudicial." (Emphasis in original.) As noted above, it is not obvious that the failure to give a *Leistiko* instruction means that "other acts" evidence has no

---

[13] In focusing on the doctrine of chances, we do not mean to foreclose the possibility that evidence like that at issue in this case might be relevant on some theory other than doctrine of chances. In its supplemental briefing, the state suggests that the evidence would be relevant because "the jury could infer because defendant knew *how* to deceive or defraud using another person's identification from his prior identity theft convictions, he did not 'accidentally' and 'innocently' possess the charged victims' pieces of stolen identification." (Emphasis in original.) For his part, defendant asserts that the evidence was offered to prove intent on a doctrine of chances theory, and our review therefore is limited to that theory of relevance. Given the specific claim of error advanced by defendant and our resolution of that claim, we need not address those arguments.

probative value to intent on a doctrine of chances theory. And, although the court in *Leistiko* and later cases noted that a *Leistiko* instruction guards against the risk that a jury might use "other acts" evidence for propensity purposes to conclude that a defendant committed the charged act, it is not obvious that, in all cases where that instruction is not given, the risk of unfair prejudice outweighs the probative value of that evidence—regardless of any other jury instructions given and regardless of the other evidence presented that the defendant committed the charged act. Because defendant does not advance any other argument about why the trial court improperly concluded that the probative value of the evidence was outweighed by a risk of unfair prejudice, we do not consider that issue further.

In sum, we cannot endorse defendant's unqualified claim—that "evidence that fails the *Leistiko* analysis and is not relevant for any other purpose must *also* be excluded under *Williams*" (emphasis in original)—as an obvious point of law that is beyond reasonable dispute. In light of *Williams*, we do not agree with defendant that the trial court plainly erred when it admitted the challenged evidence without issuing a *Leistiko* instruction. *See also State v. Brown*, 272 Or App 424, 355 P3d 216 (2015) (failure to give *Leistiko* instruction is not plain error under OEC 404(4)).

We turn to two assignments of error related to defendant's sentence. In both, defendant argues that, when the trial court imposed a sentence in the judgment that differed from the sentence announced in open court, the court violated his constitutional and statutory right "to be present when a court effects a sentence modification." *See State v. Riley*, 195 Or App 377, 384, 97 P3d 1269 (2004), *rev den*, 340 Or 673 (2006) (explaining that a defendant's right to be present is implicated when the modification involves disputed facts or the court's exercise of discretion, not when it occurs wholly by operation of law).

Defendant first argues that the trial court erred when it modified his sentence on Count 13, for criminal mischief, without pronouncing the new sentence in open court in defendant's presence. On Count 13, the trial court stated that the 60-month sentence for the criminal mischief

conviction "will be concurrent to Count 2." The trial court later entered a judgment that imposed Count 13 "consecutively to the sentence imposed in Count 19, Count 1, 2 and Count 5." The state concedes the error, but it is now moot because the trial court, on February 26, 2014, entered an amended judgment reflecting that defendant's sentence on Count 13 is to be served concurrently with defendant's other sentences. *See, e.g., State v. Retasket*, 211 Or App 432, 156 P3d 71 (2007) (concluding that the defendant's challenge to an erroneous term of sentence was moot because the trial court entered an amended judgment to correct error).

Defendant next argues that the trial court erred when it modified his sentence to deny him "earned time" on each of his felony sentences. At sentencing, the court stated that defendant would "not be eligible for good time for the first 144 months of his sentence" and found substantial and compelling reasons for that denial under ORS 137.750(1).[14] Defendant argues that the judgment is at least ambiguous on whether he is entitled to earned time after 144 months. In the judgment, every felony count states that "defendant may **not** be considered by the executing or releasing authority for any form of temporary leave from custody, reduction in sentence, work release, alternative incarceration program or program of conditional or supervised release authorized by law for which the defendant is otherwise eligible," but a paragraph at the end of the judgment states that "[d]efendant is not eligible for earned good time credit for the first 144 months of this sentence. Defendant is eligible for earned good time credit for the remaining 198 months of this sentence." (Boldface in original.) In defendant's view, the judgment is internally inconsistent because it both

---

[14] ORS 137.750(1) requires a trial court to determine whether a defendant is eligible for alternative sentencing credits, and, if so, which ones:

"When a court sentences a defendant to a term of incarceration upon conviction of a crime, the court shall order on the record in open court as part of the sentence imposed that the defendant may be considered by the executing or releasing authority for any form of temporary leave from custody, reduction in sentence, work release or program of conditional or supervised release authorized by law for which the defendant is otherwise eligible at the time of sentencing, unless the court finds on the record in open court substantial and compelling reasons to order that the defendant not be considered for such leave, release or program."

grants eligibility for earned good time after 144 months and denies it in its entirety (by making impossible a "reduction in sentence," which unambiguously includes earned time). Defendant argues that the judgment represents a "modification" of the sentence that was announced in open court, and thus he was entitled to be present. He requests that we vacate his sentence and remand for resentencing.

The state responds that defendant's argument should be reviewed for plain error because defendant failed to preserve it, and contends that the error is not plain because the Department of Corrections could interpret the judgment in one of two ways: "(1) that defendant is not eligible for *any* sentence-reducing credits; or (2) that defendant is not eligible for any sentence-reducing credits, except for earned good time once defendant has served 144 months of his sentence." According to the state, the only way to determine how the Department of Corrections has interpreted defendant's sentence is to go outside the record, so the error is not apparent on the record and therefore not plain.

We conclude that, because the asserted error first became apparent when the judgment was issued, defendant was not required to raise an objection at that time, when defendant was not present, to preserve the error. *See State v. Jacobs*, 200 Or App 665, 671, 117 P3d 290 (2005) (assignment of error was preserved where the defendant argued that the trial court erred by imposing a longer sentence by written order and judgment than that proposed orally at an earlier time, even though the defendant did not object at time of judgment). And, we conclude that the judgment reflects a sentence that effectively modifies the sentence that was announced in open court. At best, the judgment is ambiguous in that regard; as the state notes, it might be read to deny defendant earned good time after 144 months, so that the judgment modifies defendant's sentence. Because that modification is discretionary rather than a change required by operation of law, defendant had a right to be present for that modification. Accordingly, we vacate defendant's sentence and remand for resentencing.

Remanded for resentencing; otherwise affirmed.