Argued and submitted March 10, remanded for resentencing, otherwise affirmed July 22, petition for review denied October 22, 2015 (358 Or 145)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## BILLY EUGENE BROWN,
*Defendant-Appellant.*

Washington County Circuit Court
C121424CR; A154684

355 P3d 216

Rond Chananudech, Deputy Public Defender, argued the cause for appellant. With him on the opening brief was Peter Gartlan, Chief Defender, Office of Public Defense Services. With him on the supplemental brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

David B. Thompson, Senior Assistant Attorney General, argued the cause for respondent. With him on the briefs were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Ortega, Presiding Judge, and DeVore, Judge, and Garrett, Judge.

DEVORE, J.

**DEVORE, J.**

In this criminal case, the issues are whether the trial court erred in admitting evidence of defendant's prior convictions and how the analysis changes after a recent decision of the Oregon Supreme Court, *State v. Williams*, 357 Or 1, 346 P3d 455 (2015). Defendant was charged with first-degree theft, first-degree forgery, and first-degree criminal possession of a forged instrument. At trial, defendant opposed, under OEC 404(3), the admission of evidence of his prior convictions. The trial court admitted that evidence for the purpose of demonstrating that defendant had knowledge that the checks he had cashed were forged. Following *Williams*, we conclude that the trial court did not err in admitting the evidence but remand to correct an error in imposing a sentence that exceeded the maximum permitted by law. OAR 213-005-0002(4).

The facts are primarily procedural and are undisputed. Defendant attempted to cash a number of falsified checks made payable to him.[1] He was arrested, questioned, and charged with first-degree theft, ORS 164.055, first-degree forgery, ORS 165.013, and first-degree criminal possession of a forged instrument, ORS 165.022.

At trial, defendant denied knowing that the checks were "bad" and contended that he had been unwittingly induced to cash them. In response, the state tendered direct and indirect evidence of defendant's prior convictions. An officer began to recount his interview with defendant and explain that his knowledge of defendant's forgery convictions influenced how he questioned defendant. The state eventually proffered copies of defendant's judgments of conviction for theft, forgery, identity theft, and possession of a forged instrument.

Defendant objected to the evidence and requested a hearing to determine admissibility under *State v. Johns*, 301 Or 535, 555, 725 P2d 312 (1986) (setting forth case-by-case considerations for the admissibility of prior bad acts evidence). He argued that, under *Johns*, the state had not established

---

[1] Evidence adduced at trial included security camera footage of defendant presenting and cashing forged checks. That the checks were forged was uncontroverted.

the similarity between defendant's prior convictions and the charges at issue. He added that, under OEC 403, the evidence should not be admissible, because the "prejudice substantially outweighs any small bit of probative value."

The trial court deemed a *Johns* hearing unnecessary and ruled that the evidence of defendant's prior convictions was admissible for the purpose of establishing "guilty knowledge." The trial court considered OEC 403, explaining:

> "The second part of it is the weighing issue, and I want to be clear that I have done the weighing, and that the probative value is not substantially outweighed by unfair prejudice. *** Because of the difficulty in proving knowledge, what's going on in somebody's mind is so difficult, the evidence is necessary in order to establish that particular— or to disprove that particular position. And since the state has to prove that it was done with knowledge, the probative value was substantial in this particular case on that issue."

The officer went on to testify that he knew that defendant had been arrested in previous cases "for multiple counts of forgery, identity theft, and theft." When the officer had questioned defendant, the officer had confronted defendant with the prior arrests and suggested to him that "it's unlikely that a person associated with [that criminal] experience in fraud and theft would not have known what was going on."[2] Later, the court admitted certified copies of defendant's judgments of conviction for a number of forgery, theft, and identity theft offenses, exhibits numbered 30, 31, 32, 33, 35, and 36.[3]

---

[2] The officer recalled that defendant continued to deny knowledge of bad checks but began by commenting, "I'm screwed either way."

[3] Exhibit 30 was a judgment of conviction in 1997 for first-degree theft, including the court's finding that "defendant was part of a criminal operation to steal, wash, forge and cash checks." Exhibit 31 was a judgment of conviction in 1997 for first-degree forgery. Exhibit 32 was a judgment of conviction in 2001 for first-degree forgery, identity theft, and first-degree theft. Exhibit 33 was a judgment of conviction in 2001 for second-degree possession of a forged instrument and two counts of mail theft. Exhibit 35 was a judgment of conviction in 2001 for third-degree theft, attempted first-degree theft, and first-degree forgery. Exhibit 36 was a judgment of conviction in 2001 for identity theft, first-degree theft, first-degree forgery, second-degree forgery, second-degree criminal possession of a forged instrument, and attempted second-degree theft. The court did not admit a judgment of conviction for a drug-related offense, Exhibit 34.

The trial court gave a limiting instruction that the jury should not infer that prior convictions make it "more likely than not" that defendant was guilty of the offenses at issue at trial and that the jury "cannot use it for that purpose." The court explained that it admitted the evidence "only as it applies to [defendant's] guilty knowledge in this particular case, and that is the only purpose for which they will be admitted." The jury found defendant guilty on all counts.

On appeal, defendant first assigns error to the admission of the six convictions. Second, defendant challenges the trial court's failure to offer an instruction consistent with *State v. Leistiko*, 352 Or 172, 282 P3d 857, *adh'd to as modified on recons*, 352 Or 622, 292 P3d 522 (2012), that the jury could not consider defendant's prior convictions as evidence of defendant's mental state until first finding that defendant had committed the *actus reus* of forgery. Lastly, defendant questions the length of his sentence and imposition of attorney fees. We take each issue in order.

After defendant submitted his brief for our review, the Supreme Court issued its opinion in *Williams*, altering the analytical framework for consideration of evidence of "other bad acts" in criminal cases.[4] 357 Or at 3. In *Williams*, the defendant was charged with two counts of first-degree sexual abuse. The state offered evidence of the defendant's possession of two pairs of children's underwear for the purpose of establishing that the defendant "had touched the victim with a sexual purpose rather than accidentally." *Id.* at 4. The trial court admitted that evidence under OEC 404(3).[5] The defendant had argued that the evidence was

---

[4] In light of the court's opinion in *Williams*, our analysis departs from our previous case law resolving questions under OEC 404(3). *See, e.g., State v. Davis*, 156 Or App 117, 124, 967 P2d 485 (1998) (applying *Johns* test and concluding that "[e]vidence of prior bad conduct is not admissible under OEC 404(3) to show that defendant acted in conformity with his bad character"); *State v. Dunn*, 160 Or App 422, 430, 981 P2d 809 (1999), *rev den*, 332 Or 632 (2001) ("If the evidence is relevant * * * OEC 404(4) makes it admissible without balancing under OEC 403 unless the state or federal constitution requires that balancing.").

[5] OEC 404(3) provides:

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

inadmissible because it was not relevant under OEC 401 and because it was unfairly prejudicial under OEC 403.[6]

On review, the court addressed the relationship between OEC 404(3) and OEC 404(4) and, in turn, the relationship between OEC 404(4) and OEC 403.[7] The court determined that, "[f]rom the text, context, and legislative history of OEC 404(4), * * * the legislature intended OEC 404(4) to supersede OEC 404(3) in criminal cases, except, of course, as otherwise provided by the state or federal constitutions." 357 Or at 15.

The court reached "a different conclusion with respect to the relationship between OEC 404(4) and OEC 403[.]" 357 Or at 15. The court concluded that, when a trial court admits "other acts" evidence pursuant to OEC 404(4), the Due Process Clause of the Fourteenth Amendment to the United States Constitution requires that the trial court engage in balancing under OEC 403.[8] 357 Or at 19. In reviewing the analytical framework, the court recited that "other acts" evidence is admissible if that evidence is relevant under OEC 401 and survives scrutiny when comparing probative value and unfair prejudice under OEC 403. The court explained that

> "[w]hen a party objects, under OEC 403, to 'other acts' evidence offered under OEC 404(4), a trial court must engage in the balancing anticipated by OEC 403. At one end of the

---

[6] OEC 403 provides, in part, that, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice[.]"

[7] OEC 404(4) provides:

"In criminal actions, evidence of other crimes, wrongs or acts by the defendant is admissible if relevant except as otherwise provided by:

"(a) [OEC 406 to 412] and, to the extent required by the United States Constitution or the Oregon Constitution, [OEC 403];

"(b) The rules of evidence relating to privilege and hearsay;

"(c) The Oregon Constitution; and

"(d) The United States Constitution."

[8] The court confined its decision to the case at hand involving sexual abuse of a child. The court observed that, in other cases, it is conceivable that due process "not only requires the application of OEC 403, but also precludes the admission of 'other acts' evidence to prove propensity." 357 Or at 17. The court declined to "decide whether OEC 404(4) may be constitutionally applied in other types of prosecutions." *Id.* at 20 n 19.

spectrum, 'other acts' evidence that is offered for nonpropensity purposes—*i.e.*, to prove motive, intent, identity, or lack of mistake or accident—generally will be admissible as long as the particular facts of the case do not demonstrate a risk of unfair prejudice that outweighs the probative value of the evidence. At the other end of the spectrum, * * * when 'other acts' evidence 'goes only to character and there are *no* permissible inferences the jury may draw from it,' it is more likely that the evidence will be excluded. Such evidence generally will have little or no cognizable probative value, and the risk that the jury may conclude improperly that the defendant had acted in accordance with past acts on the occasion of the charged crime will be substantial."

357 Or at 19-20 (internal citation omitted) (emphasis in original). The court did not consider whether the trial court erred in applying OEC 403, because the defendant did not raise that issue on appeal. 357 Or at 23.

In light of *Williams*, defendant here filed a supplemental brief contending that the trial court abused its discretion in failing to properly engage in OEC 403 balancing.[9] Defendant argues that the trial court was required to "engage in a four-step balancing process" under OEC 403, as described in *State v. Mayfield*, 302 Or 631, 645, 733 P2d 438 (1987) (outlining "four steps" for when a trial judge makes an OEC 403 ruling). Defendant asserts that the trial court "did not properly assess the probative value of the evidence" and "failed to consider the prejudice to defendant."

The state responds that the trial court's ruling was consistent with the framework set out in *Williams*. The state argues that the Supreme Court did not reach whether the trial court in *Williams* erred in its ruling under OEC 403 and therefore "left open whether due process balancing differs from traditional balancing." Unlike defendant, the state believes that the analytical framework for admissibility of "other acts" evidence imposes a narrower "due process balancing" rather than customary balancing under OEC 403. The state urges that "[a] due process violation occurs only

---

[9] Defendant does not argue that the analytical framework presented in *Williams* is inapplicable to the criminal charges at issue in his case, which are not charges involving sexual abuse of a child. We express no opinion on that matter.

when the prejudicial effect of evidence so outweighs its probative value as to render the defendant's trial fundamentally unfair."[10]

As we explain below, we conclude that the trial court did not err in its application of OEC 403 in light of *Williams*. Although the state argues that a unique "due process" standard governs balancing when "other act" evidence is considered, we need not decide that issue in this case. In *Williams*, the court observed, "Given the result that we reach in this case—that the trial court correctly admitted the underwear evidence under 'traditional' or 'subconstitutional' balancing— we need not further explore the parties' arguments about whether 'due process' balancing differs from 'traditional' or 'subconstitutional' balancing." 357 Or at 19 n 17. Similarly, in this case, the trial court engaged in "traditional" OEC 403 balancing of defendant's prior convictions. As in *Williams*, the trial court "did not make a distinction between 'due-process,' and 'traditional,' or 'subconstitutional,' balancing, and we leave the significance of those distinctions, if any, to another day." *Id.* For the reasons that follow, we ultimately conclude that the trial court did not abuse its discretion in its "traditional" balancing under OEC 403.

Applying OEC 403, the court first considers why the evidence was relevant. As the court explained in *Williams*, "'other acts' evidence that is offered for nonpropensity purposes—*i.e.*, to prove motive, intent, identity, or lack of mistake or accident—generally will be admissible as long as the particular facts of the case do not demonstrate a risk of unfair prejudice that outweighs the probative value of the evidence." *Id.* at 19. Here, the trial court explained that the evidence of defendant's prior convictions was offered for a nonpropensity purpose. Defendant did not dispute that the checks were forged or that he was the individual who attempted to cash them. Rather, defendant contended that, because he did not know he possessed forged instruments, he lacked the requisite mental state to commit the charged

---

[10] Given the state's understanding of the balancing required under *Williams*, the state contends that defendant's reliance on *Mayfield* is misplaced because that case reflected "an application of the OEC 403 traditional balancing rule." (Emphasis omitted.)

offenses. To refute that contention, the state offered evidence of defendant's prior convictions. That evidence was relevant to show that defendant had not made a mistake or otherwise lacked knowledge of the status of the checks at the time he attempted to cash them.

Second, OEC 403 requires the court to consider the probative value of the evidence. A trial court may consider the proponent's need for the proffered evidence, how likely it was that the defendant committed the "other act" at issue, the relative strength or weakness of the evidence as a whole, and the similarity between the other act and the offenses at issue. *Cf. Johns*, 301 Or at 555 (discussing such considerations under the rubric of OEC 404(3)).

In this case, the trial court indicated that, on balance, the probative value was "substantial." The court found that the need for the proffered evidence was significant "[b]ecause of the difficulty in proving knowledge" and because "the evidence is necessary" to establish defendant's mental state, a central issue in the case. The other acts evidence was presented reliably in the form of judgments of conviction. That defendant had committed the other acts was uncontroverted.

Finally, OEC 403 requires the trial court to consider how substantial is the risk of unfair prejudice. A "trial court may consider whether other evidence that does not carry the same risk of unfair prejudice is available to prove an element of the charged crime." *Williams*, 357 Or at 22 n 21. And, a trial court may consider the effectiveness of a limiting instruction to minimize the risk of prejudice. Evidence is unfairly "prejudicial if it invites the jury to resolve the case on the improper basis that the defendant is a bad person." *Johns*, 301 Or at 558. It is a risk "that the jury may conclude improperly that the defendant had acted in accordance with past acts on the occasion of the charged crime." *Williams*, 357 Or at 20.

In this case, the evidence of defendant's prior convictions was potentially prejudicial to the extent that it demonstrated a pattern of similar offenses and presented a risk that jurors would conclude that defendant had acted in accordance with his past acts. That risk, however, was

mitigated by the court's limiting instruction that the jury should not infer that prior convictions make it "more likely than not" that defendant was guilty of the offenses at issue at trial and that the jury could not consider the other acts evidence for that purpose.

Although the trial court would seem to have properly applied OEC 403, defendant insists that the trial court erred in failing to "engage in a four-step balancing process" under *Mayfield*. 302 Or at 645. In *Mayfield*, the Supreme Court "established an 'approved method of analysis' that should guide trial courts in their decision-making under OEC 403." *State v. Borck*, 230 Or App 619, 637, 216 P3d 915, *adh'd to as modified on recons*, 232 Or App 266, 221 P3d 749 (2009), *rev den*, 348 Or 291 (2010) (quoting *State v. Walton*, 311 Or 223, 235, 809 P2d 81 (1991)). The court explained that

> "the judge should analyze the quantum of probative value of the evidence and consider the weight or strength of the evidence. In the second step the trial judge must determine how prejudicial the evidence is, to what extent the evidence may distract the jury from the central question whether the defendant committed the charged crime. The third step is the judicial process of balancing the prosecution's need for the evidence against the countervailing prejudicial danger of unfair prejudice, and the fourth step is for the judge to make his or her ruling to admit all the proponent's evidence, to exclude all the proponent's evidence or to admit only part of the evidence."

*Mayfield*, 302 Or at 645.

Because *Mayfield* is a matter of substance, not form or litany, the trial court's ruling comported with *Mayfield*. Although the court did not recite a four-step analysis, "the record establishes that, in deciding to admit [the evidence], the trial court considered the matters prescribed in *Mayfield*." *Borck*, 230 Or App at 637. The court made findings that the probative value was substantial and that it outweighed the prejudice to defendant. The court specified that the evidence was necessary to establish defendant's mental state and that the evidence was particularly significant in the context of the case. Therefore, "[a]lthough the court's statements are not extensive, the totality of the attendant

circumstances indicate that the court did engage in the conscious process of balancing the costs of the evidence against its benefits that *Mayfield* requires." *Id.* at 638 (internal quotation marks omitted). Also, the trial court did not admit the evidence "wholesale and indiscriminately." *Id.* The court excluded evidence of defendant's prior drug-related conviction and offered a limiting instruction admonishing the jury not to consider the evidence for impermissible purposes. We conclude that the trial court's determination under OEC 403 was within the range of legally permissible outcomes. *See id.* at 638-39 (demonstrating a determination within the range of permissible outcomes). The court did not err in admitting the evidence of prior convictions.

We turn to defendant's second issue, asking whether the trial court erred in failing to give a *Leistiko* jury instruction that would have required the jury to find that defendant had committed the charged act before considering the prior acts as evidence of his intent. *See* 352 Or at 184. As an initial matter, we agree with the state that, in the absence of a request for a *Leistiko* instruction, defendant's argument that he was entitled to that instruction is unpreserved.

Defendant requests alternatively that we review for plain error. The state rejoins that the trial court did not plainly err, because the *Leistiko* limiting instruction was not required in this case. Among other things, the state contends that a precondition of a *Leistiko* limiting instruction is that the defendant does not admit the charged acts. The state argues that there was no dispute that defendant committed the *actus reus* of the offenses at issue and, therefore, defendant lacked a basis for the instruction in the first instance.

We may review an unpreserved assignment of error as "an error of law apparent on the record" under ORAP 5.45(1) if certain conditions are met: (1) the error is one of law; (2) the error is "apparent"—that is, the legal point is obvious and is not reasonably in dispute; and (3) the error appears "on the face of the record"—that is, "[w]e need not go outside the record or choose between competing inferences to find it, and the facts that comprise the error are irrefutable." *State v. Brown*, 310 Or 347, 355, 800 P2d 259 (1990).

Even where an error meets those criteria, the decision to review the error remains in our discretion. *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 383, 823 P2d 956 (1991).

In this case, we conclude, for the reason the state asserts, that the trial court's failure to offer a *Leistiko* instruction is not plain. There was no dispute that defendant acted to cash the checks. In addition, *Leistiko* is founded on OEC 404(3), a provision that *Williams* re-evaluated. Although we express no opinion as to the continued vitality of *Leistiko*, it suffices to say that the failure to give a *Leistiko* instruction *sua sponte* was not plain error. *State v. Horner*, 272 Or App 355, 356 P3d 111 (2015).

Finally, we address defendant's assignments of error relating to matters of sentencing. Defendant acknowledges that the issues are unpreserved, but he argues that the trial court plainly erred in imposing 60 months of imprisonment in addition to 12 months of post-prison supervision (PPS), exceeding the maximum allowable by law.[11] OAR 213-005-0002(4) (where the incarceration term, together with the PPS term, exceed the statutory maximum, rule requires that "the sentencing judge * * * first reduce the duration of post-prison supervision to the extent necessary to conform the total sentence length to the statutory maximum"). The state concedes that the sentence was unlawful and that the court plainly erred in imposing an unlawfully excessive sentence. We agree with defendant, accept the state's concession, and, for the reasons stated in *State v. Ramos*, 254 Or App 748, 749, 295 P3d 176 (2013), exercise our discretion to correct the error. Because we must remand for resentencing on that basis, it is unnecessary to address defendant's remaining argument that the trial court plainly erred in imposing $600 in attorney fees without first determining whether he had the ability to pay. That issue can be resolved at resentencing.

Remanded for resentencing; otherwise affirmed.

---

[11] In this case, defendant was convicted of three Class C felony offenses. ORS 165.013(3) (first-degree forgery is a Class C felony); ORS 165.022(2) (first-degree criminal possession of a forged instrument is a Class C felony); ORS 164.055(3) (first-degree theft is a Class C felony). The statutory maximum sentence for a Class C felony is five years. ORS 161.605(3).