Argued and submitted March 31, Grants Pass High School, affirmed
August 26, 2015, petition for review denied February 4, 2016 (358 Or 550)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DION CHARLES LOGAN,
*Defendant-Appellant.*

Marion County Circuit Court
12C45840; A153874

359 P3d 403

Ernest G. Lannet, Chief Deputy Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Timothy A. Sylwester, Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and David B. Thompson, Assistant Attorney General.

Before Ortega, Presiding Judge, and DeVore, Judge, and Garrett, Judge.

DEVORE, J.

## DEVORE, J.

Defendant appeals a judgment of conviction for strangulation and fourth-degree assault, constituting domestic violence. He assigns error to the trial court's ruling admitting evidence of his prior convictions. The trial court admitted the evidence for the purpose of establishing that defendant had the intent to commit strangulation and fourth-degree assault. He argues that, because he did not stipulate to the *actus reus* of the charged offenses, the trial court erred when it did not provide an instruction consistent with *State v. Leistiko*, 352 Or 172, 282 P3d 857, *adh'd to as modified on recons*, 352 Or 622, 292 P3d 522 (2012). We conclude that defendant's argument under *Leistiko* was not preserved and does not constitute plain error. We affirm.

We summarize first the charged acts of domestic violence and later the prior acts of violence. Because the jury found defendant guilty, we view the evidence in the light most favorable to the state. *State v. Clegg*, 332 Or 432, 434, 31 P3d 408 (2001). Defendant and the victim had an on-again-off-again relationship for five or six years. On July 1, 2012, defendant accused the victim of cheating on him, and he hit her on her cheek with an open hand. The blow caused pain to where the victim had a bad tooth. Four weeks later, on July 31, defendant and the victim had an argument. The victim threatened to end the relationship and to call defendant's mother. As the victim tried to run to the bedroom, defendant caught her, slammed her into the hallway wall, choked her with both hands around her neck, and shouted at her profanely. The victim could not breathe, her legs buckled, and she fell unconscious. When she woke up, defendant "was shoving [her] around on the floor asking where the phone was." Their relationship soon ended, and the victim reported both the July 1 and July 31 incidents to the police on August 10.[1]

Officer Hibbler interviewed defendant. Defendant admitted to Hibbler that he had threatened to beat up the victim a few days prior to her police report, that he had hit her on July 1, and that he had held her against the wall

---

[1] The victim recanted at the grand jury hearing. At trial, she testified consistently with these facts and testified that she had lied to the grand jury.

by her neck on July 31. In that later incident, defendant recounted that the victim had fallen to the ground and that he believed that "she fainted."[2] Defendant was charged with strangulation, ORS 163.187, and fourth-degree assault constituting domestic violence, ORS 163.160; ORS 132.586.

Before defendant's trial, the state moved *in limine* to introduce evidence of earlier abuse of the same victim. The state presented evidence that on March 24, 2008, the victim and defendant had had an argument. Defendant grabbed the victim by the neck, put her in a headlock, dragged her toward their apartment, and threatened to beat her up as soon as they got home. A witness called 9-1-1. By the time Officer Pohle arrived, defendant was in his apartment, where Pohle and another officer forcibly arrested him. The victim told Pohle that, prior to *that* day, defendant had choked her, nearly causing her to lose consciousness, and that she had not made a police report because she was afraid. As a result of the 2008 incidents, defendant was convicted of strangulation and attempted fourth-degree assault.

Defendant stipulated to those prior convictions but argued that evidence of those acts was inadmissible at trial under OEC 404(3).[3] He argued that the prior bad acts in this case amounted to pure propensity evidence that did not fall within an exception to the rule. Much of the parties' arguments focused on the Supreme Court's decision in *State v. Pitt*, 352 Or 566, 293 P3d 1002 (2012), which had issued two weeks prior to the hearing.[4] *Pitt* followed *Leistiko*, which had issued three months prior to the hearing. Both

---

[2] At trial, defendant testified on his own behalf. He testified that, although he did pin the victim against the wall, he did so by her shoulders and that the victim's "eyes rolled in the back of her head, and she just fell down." He testified that he did not hold the victim by her neck on July 31.

[3] OEC 404(3) provides:

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

[4] We do not recite, in full, the parties' arguments to the trial court regarding *Pitt*, because recent case law has changed the analysis and those arguments are immaterial here. *See State v. Brown*, 272 Or App 424, 428 n 4, 355 P3d 216 (2015) (In light of *State v. Williams*, 357 Or 1, 346 P3d 455 (2015), "our analysis departs from our previous case law resolving questions under OEC 404(3).").

cases construed the "prior bad acts" rule of OEC 404(3). Defendant asserted that the decision in *Pitt* stood for the proposition that "without a stipulation or other evidence that the charged acts themselves had occurred, then the * * * uncharged [prior acts] evidence could not be admitted because the evidence tended to prove only that the defendant acted in conformity with his character to commit such acts." Defendant did not ask for a jury instruction that the jury should first find whether the charged acts had occurred before consideration of the prior acts.[5] Defendant simply opposed the evidence as propensity evidence. The state argued that the evidence was not being proffered as propensity evidence. Rather, the state contended, under *State v. Johns*, 301 Or 535, 725 P2d 312 (1986), and the doctrine of chances, the evidence of defendant's prior acts was admissible at that stage in the proceedings because it was relevant to demonstrate defendant's intent or to show that there was an absence of mistake or accident in strangling the victim.[6]

The trial court ruled that the prior acts satisfied the criteria set out in *Johns. Id.* at 555-56 (establishing test for the admissibility of evidence of prior bad acts used to prove intent in the current proceeding). The court continued,

"At this point I'm going to allow the evidence in under the analysis of *Johns* and *Pitt*, but I do think that depending upon what happens at trial that that may change some things. * * * I believe that there is enough relevant facts that under [OEC] 404 to allow the evidence to come in and that, at least at this point in time, it is more probative than prejudicial under 403."

---

[5] In *Pitt*, the court considered whether evidence admitted at the defendant's trial was "properly admitted to prove intent and absence of mistake or accident." 352 Or at 578. In the absence of the defendant's stipulation to the *actus reus* of the charged offense, the court concluded that the state "would have to introduce evidence at trial sufficient to permit the factfinder to find beyond a reasonable doubt" that the defendant in fact committed the charged act, and that the trial would have to issue the appropriate limiting instruction to the jury. *Id.* at 580. The court concluded that the trial court had erred because in a pretrial ruling, it "ruled * * * without conditions, that the uncharged misconduct evidence was relevant and admissible." *Id.* at 581.

[6] The state argued, "[T]he whole reason why we get to introduce *Johns* evidence is to show [defendant has] done this to her before, same victim, same manner, and now [defendant is] saying it's a mistake. Well, absence of a mistake is a perfect reason why *Johns* says this does come in."

By cautioning that the pretrial ruling may change "depending upon what happens at trial," the court indicated that its ruling was not unconditional.[7]

On the day of trial, defendant asked for the court to "clarify [its] ruling" as to the admissibility of the other acts evidence because the state intended to call Officer Pohle as its first witness to testify to the events on March 24, 2008. Defendant said that he understood the court's pretrial ruling to permit the state to offer defendant's prior conviction "as evidence of [his] intent at the time * * * of the charged conduct here [and] that the evidence of the prior incident was * * * admissible for that purpose * * *." He objected that the state should be prohibited from offering Pohle's testimony about the 2008 incidents without first introducing evidence that defendant had committed the charged acts in the present case. The trial court ruled that the state could present its case chronologically. In response to the court's ruling, defendant made a "continuing objection to any testimony" from Pohle. Defendant did not urge that the evidence could be admitted only conditioned upon the state proving, by the close of trial, evidence that defendant committed the charged acts, nor did defendant urge that a jury instruction should be given per *Leistiko*.

At the close of the state's case, defendant renewed his original objection and contended that the prejudice of the evidence of the March 2008 incident outweighed its probative value. The trial court ruled that "obviously, there's some prejudice to your client with regard to prior convictions, but I don't think * * * that prejudice outweighs the probative value of what we discussed and what I ruled on." The trial court offered the following instruction to the jury,

> "If you find that the defendant has been previously convicted of a crime, you may consider this conviction only for its bearing, if any, on the believability of the defendant's testimony. Specifically, you may not use this evidence for the purpose of drawing the inference that because the defendant was convicted of a previous crime the defendant may be guilty of the crime charged in this case."

---

[7] Earlier in the colloquy with counsel, the trial court expressed its awareness of the *Pitt* decision and the hazard of granting a motion *in limine* unconditionally.

Defendant did not object to the court's limiting instruction. The jury found defendant guilty of both counts as charged.

On appeal, defendant challenges the trial court's failure to offer an instruction consistent with *Leistiko*, 352 Or at 172, to the effect that the jury should not consider defendant's prior convictions as evidence of defendant's mental state until first finding that he had committed the *actus reus* of the charged offenses. The state responds, among other things, that defendant's assignment of error was unpreserved and that it did not constitute plain error.

After the parties submitted briefs for review, the Supreme Court issued its opinion in *State v. Williams*, 357 Or 1, 346 P3d 455 (2015), "altering the analytical framework for consideration of evidence of 'other bad acts' in criminal cases." *State v. Brown*, 272 Or App 424, 428, 355 P3d 216 (2015). The court concluded that, OEC 404(4)[8] supersedes OEC 404(3), and that, under OEC 404(4), evidence of a criminal defendant's other acts is admissible, so long as that evidence is relevant under OEC 401 and "a trial court determine[s] whether the risk of unfair prejudice posed by the evidence outweighs its probative value under OEC 403."[9] *Williams*, 357 Or at 24.

The parties submitted supplemental briefing in light of the new interpretation of the relationships between OEC 404(3) and OEC 404(4) and between OEC 404(4) and OEC 403. Defendant argues that *Williams* "concerns the admissibility of 'other acts' evidence offered to prove purposeful conduct on a theory distinct from the doctrine of chances; it does nothing to alter the threshold relevancy analysis set

---

[8] OEC 404(4) provides:

"In criminal actions, evidence of other crimes, wrongs or acts by the defendant is admissible if relevant except as otherwise provided by:

"(a) [OEC 406 to 412] and, to the extent required by the United States Constitution or the Oregon Constitution, [OEC 403];

"(b) The rules of evidence relating to privilege and hearsay;

"(c) The Oregon Constitution; and

"(d) The United States Constitution."

[9] OEC 403 provides, in part, that, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice[.]"

out in *Pitt* for evidence offered to prove repeated similar conduct is intentional * * *."[10]

The state contends that *Williams* "does not mention or even suggest that a limiting instruction like that described in *Leistiko* is required when other acts evidence is admitted under OEC 404(4)." We understand the state to urge that the court's lessons from OEC 404(3) in *Leistiko* and *Pitt* are inapplicable after *Williams*, in light of an altered analytical framework, in which OEC 404(4) supersedes OEC 404(3). We do not, however, reach the merits of the dispute.

Before we can address the merits, we must consider whether the issue is preserved. To preserve an argument for appellate review, "a party must provide the trial court with an explanation of his or her objection that is specific enough to ensure that the court can identify its alleged error with enough clarity to permit it to consider and correct the error immediately, if correction is warranted." *State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000). In this case, defendant did not request a *Leistiko* limiting instruction, object to the absence of such an instruction, or object to the different form of the limiting instruction given by the court. Although defendant argued that the court was required to comply with *Pitt*, the record demonstrates that defendant's arguments were that the evidence was simply not admissible as propensity evidence and that, if it was admissible, the state was required to prove sequentially the *actus reus* of the charged offenses before introducing prior acts evidence. 352 Or at 579. By the close of evidence, however, the state did provide sufficient evidence from which the jurors would find defendant guilty of the charged conduct, and the issue had evolved to the need for a *Leistiko* instruction. Although both *Leistiko* and *Pitt* were decided and discussed, defendant did not make the necessary objection to the trial court to draw attention to the need for the instruction on first finding that the charged conduct had occurred. *See Brown*, 272 Or App at 434 (objections about similarity of acts or prejudice versus probative value did not preserve issue about failure to

---

[10] Defendant does not assign error to the trial court's ruling under OEC 403 or otherwise dispute that evidence of his prior convictions was admissible under OEC 404(4).

give *Leistiko* instruction); *see also State v. Schnur*, 269 Or App 850, 857, 346 P3d 521 (2015) (failure to preserve when a different argument was made against admission of other bad acts evidence). Given the record presented in this case, we conclude that defendant did not preserve his argument for appellate review.

Although defendant requests, in the alternative, that we review for plain error, we decline to do so without further discussion and affirm. *Brown*, 272 Or App at 435 (failure to give *Leistiko* instruction is not plain error under OEC 404(4)); *State v. Horner*, 272 Or App 355, 369, 356 P3d 111 (2015) (unpreserved argument regarding *Leistiko* analysis is not plain error in light of *Williams*).

Affirmed.