Argued and submitted July 29, 2014, reversed and remanded March 9, petition for review allowed June 30, 2016 (359 Or 847)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

RUSSELL ALLEN BAUGHMAN,
*Defendant-Appellant.*

Clatsop County Circuit Court
111306; A152531

369 P3d 423

Eric Johansen, Deputy Public Defender, argued the cause for appellant. With him on the opening and reply briefs was Peter Gartlan, Chief Defender, Office of Public Defense

Services. With him on the supplemental brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section.

Patrick M. Ebbett, Assistant Attorney General, argued the cause for respondent. With him on the briefs were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Sercombe, Presiding Judge, and Hadlock, Chief Judge, and Tookey, Judge.

SERCOMBE, P. J.

### SERCOMBE, P. J.

Defendant appeals a judgment of conviction for one count of first-degree unlawful sexual penetration, ORS 163.411, three counts of first-degree sexual abuse, ORS 163.427, one count of second-degree sodomy, ORS 163.395, one count of second-degree unlawful sexual penetration, ORS 163.408, one count of third-degree sodomy, ORS 163.385, and one count of third-degree sexual abuse, ORS 163.415. All of the acts relating to those convictions involved B, the daughter of defendant's girlfriend. In his opening brief, defendant asserts that, under OEC 404(3),[1] the trial court erred in admitting uncharged misconduct evidence from B as well as another witness, A, "concerning prior sexual crimes committed by defendant" against them for the "purpose of establishing (1) defendant's identity, (2) defendant's intent, and (3) [to] bolster[] [B]'s credibility."

After oral argument, the Supreme Court decided *State v. Williams*, 357 Or 1, 346 P3d 455 (2015), in which it concluded that OEC 404(4) "supersede[s] OEC 404(3) in criminal cases, except * * * as otherwise provided by the state or federal constitutions."[2] *Id.* at 15. As further discussed below, the court held that, under OEC 404(4), a trial court may admit evidence of a criminal defendant's other crimes, wrongs, or acts if "(1) it is relevant under OEC 401, and (2) as required by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, 'a trial court determines whether the risk of unfair prejudice posed by the evidence outweighs its probative value under OEC 403.'"

---

[1] OEC 404(3) provides:

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

[2] OEC 404(4) provides:

"In criminal actions, evidence of other crimes, wrongs or acts by the defendant is admissible if relevant except as otherwise required by:

"(a) [OEC 406 to 412] and, to the extent required by the United States Constitution or the Oregon Constitution, [OEC 403];

"(b) The rules of evidence relating to privilege and hearsay;

"(c) The Oregon Constitution; and

"(d) The United States Constitution."

*State v. Horner*, 272 Or App 355, 357, 356 P3d 111 (2015) (quoting *Williams*, 357 Or at 24). In light of *Williams*, in a supplemental brief, defendant "challenges admission of the evidence under OEC 403." According to defendant, under *Williams*, all uncharged misconduct evidence is subject to OEC 403 balancing. And, in defendant's view, in conducting OEC 403 balancing in this case, the trial court erred because it failed to go through the four-step balancing process required by *State v. Mayfield*, 302 Or 631, 645, 733 P2d 438 (1987), and failed to make a record which reflects an exercise of discretion. Defendant also contends that, in any event, the evidence had minimal probative value and that value was substantially outweighed by the danger of unfair prejudice. Therefore, according to defendant, the trial court abused its discretion in refusing to exclude the evidence under OEC 403.[3] As explained below, we agree with defendant that the trial court did not properly conduct the balancing required pursuant to OEC 403 and, because it was error to admit the evidence without properly conducting that balancing, we reverse and remand.[4]

In April 2011, B, who, along with her family, lived in Umatilla County, reported that defendant had sexually abused her. According to B, defendant's abuse had begun when she was about seven years old and had continued over a period of years. During the time when defendant was abusing B, the family had lived in both Umatilla and Clatsop counties and the abuse had occurred in both counties. Based on B's allegations, defendant was indicted in Clatsop County for multiple counts of rape, sodomy, unlawful sexual penetration, and sexual abuse.

Before trial, the state moved to introduce at trial evidence of defendant's prior bad acts. In particular, it sought to introduce evidence of uncharged acts of sexual abuse by defendant against B as well as evidence that defendant had sexually abused A, a daughter of defendant's previous

---

[3] Pursuant to OEC 403,

"[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."

[4] We reject without discussion defendant's fifth assignment of error.

girlfriend.[5] The state asserted that the evidence regarding A was relevant "to explain the defendant's motive to molest [B]; to show that the defendant was the instigator; that defendant is following a common plan or scheme, and that the molestation was not an accident or mistake on the part of the defendant." As for B, the state contended that her testimony about defendant's prior abuse would "allow the jury to see a clear, cohesive picture of how defendant perpetuated the abuse for which he has been indicted in Clatsop County." At a pretrial hearing, the state offered testimony from both B and A.

According to B, who was 16 years old at the time of the hearing, defendant had been in a relationship with her mother and had moved in with the family when B was approximately five years old. Defendant's relationship with B's mother lasted for more than nine years, and he was "like a dad" to B. Defendant and B's mother also had two children together. Defendant began sexually abusing B when she was about seven years old, when the family lived in Umatilla County. B testified that defendant began by touching her body, and then escalated his abuse to putting his fingers into her vagina and making her touch his penis. When B was in seventh or eighth grade, the family moved to Clatsop County. After the move, defendant continued to abuse B; she testified that defendant began having sexual intercourse with her soon after the move. In addition, B testified that defendant compared her with her mother, telling her that she had a better body and a better "vagina and boobs" than her mother. B explained that defendant instructed her not to tell other people about his conduct and, according to B, defendant threatened to hurt her if she told.

A, who was 21 years old at the time of the hearing, testified that defendant was in a relationship with her mother for approximately nine years, and that he moved into their family home when A was about two years old.

[5] The state filed two separate motions to admit the prior bad acts evidence. Initially, the state filed a motion to admit evidence that defendant has sexually abused A. After a hearing, the court issued a letter opinion and order with respect to that evidence. Thereafter, the state moved for the admission of evidence that defendant had abused B in another county. The court admitted that evidence based on "the same rationale" it had set forth in its earlier letter opinion.

Defendant and A's mother had a child together who was born when A was three years old. Defendant began sexually abusing A when she was about 10 years old and in the fifth grade. According to A, defendant would insert his fingers into her vagina, kiss her, put his mouth on her vagina, and touch her breasts; he also showed her pornographic videos, made her touch his penis and, on one occasion, had intercourse with her. Defendant also compared A's looks to her mother's, telling her that her "boobs were bigger than [her] mom's." Defendant and A's mother eventually ended their relationship, and A testified that defendant last abused her when she was 13 or 14 years old.

In its argument to the trial court, the state noted the similarities between what happened to B and A:

"[T]he relationship and what happened to the two girls is very similar, the relative age when the defendant started molesting them, the relationship he has to them and some of the things he did, as in molesting with other people in the home, which I think provides a good cover for him, the fact that * * * both of them he compared them to their mother and telling them that they were * * * prettier or had a nicer body or something than their mother, building them up that way."

*See State v. Johns*, 301 Or 535, 555-56, 725 P2d 312 (1986) (setting forth considerations for the admissibility of prior bad acts evidence). The state also argued that, under our case law, in determining whether to admit the prior acts evidence, the trial court was not permitted to balance the probative value of the evidence against the prejudicial effect under OEC 403. According to the state, the court was "prohibited from doing that" balancing.

Defendant, for his part, asserted that the evidence was not offered for any relevant purpose and that it was "mere propensity evidence." Defendant further asserted that, if the evidence was relevant, it was "not of sufficient nature that it would meet the requirements for admissibility under the various tests promulgated for the different method for which the State seeks to offer" it. In response to the state's assertion that the court could not balance the prejudicial effect of the evidence against its probative value under OEC 403, although he acknowledged that "the

case law seems pretty clear that [it is] not an issue that the Court's supposed to be considering," defendant nonetheless asserted that the prior acts evidence should "be excluded * * * because its probative value is frankly outweighed by the danger of * * * unfair prejudice." Defendant also noted that, even if it did not conduct that balancing, the court should still evaluate the "question of whether or not this is going to be overly distracting to the jury, overly time consuming, those kinds of things." And, according to defendant, the evidence would add a significant amount of delay to the trial and lead to a great deal of confusion for the jury.

The court took the matter under advisement and later issued a letter opinion addressing the admissibility of the prior acts evidence. The court observed that defendant had "entered a 'not guilty' plea to each of the counts alleged in the indictment," and that the state had the burden to prove each element of the charges beyond a reasonable doubt. According to the court, "[i]n recognition of the State's burden, a reasonable jury could infer from Defendant's 'not guilty' plea to each charge that the alleged victim is lying, confused or has misidentified the perpetrator" or "has lied about, or is confused about, or has misinterpreted Defendant's intent." Thus, the court stated that the prior acts evidence was "relevant on the issues of identity, intent and to bolster the credibility of the victim."[6]

Although the court specifically noted that it was not constitutionally required to balance the probative

---

[6] With respect to intent, the court noted that *Johns* "sets forth six factors which should be considered by the court prior to" the admission of such evidence:

"1. That the present charged act requires proof of intent. It does.

"2. That the prior act required intent. It did.

"3. That the victim in the prior act is in the same 'class' as the victim in the present case. They are.

"4. That the prior acts were the same or similar to the acts involved in the instant case. They are.

"5. That the physical elements of the prior acts and the present acts are similar. They are.

"6. Regarding the fact of weighing the probative value of the prior act evidence against the danger of unfair prejudice, confusion of the issues or misleading the jury, undue delay or presentation of cumulative evidence, the Oregon or Federal Constitution does not require the court to perform a balancing test."

value of the prior acts evidence against the danger of unfair prejudice, the court nonetheless stated that it "should still consider whether evidence admissible under [OEC] 404(3) should nonetheless be excluded under OEC 403." In evaluating that question, the court noted that it would consider

"(1) The need for the evidence (in sex abuse cases, there is often no physical evidence or witnesses);

"(2) The certainty that the other crime was committed and that the defendant was the actor (based upon a preponderance of the evidence);

"(3) The strength or weakness of the evidence (direct testimony of the prior victim; offering evidence of identity, intent, plan and the absence of mistake or accident);

"(4) Its inflammatory effect on the jury; and

"(5) How time-consuming or distracting proof of the other crime or act will be."

*See Johns*, 301 Or at 557-58 (in determining "when the probative value of the evidence exceeds it prejudicial nature," a trial court should consider, among other things, "(1) the need for the evidence; (2) the certainty that the other crime was committed and that defendant was the actor; (3) the strength or weakness of the evidence; and (4) its inflammatory effect on the jury"). According to the trial court, in this case, those "factors have been met." The court stated that, in sum,

"based upon Defendant's 'not guilty' plea to each charge, denying the events occurred at all and considering the State's burden of proof, a reasonable jury could infer that the alleged victim is lying, confused or mistaken about what happened to her or who did it. In my opinion, the alleged victim's identification of Defendant as perpetrator of the criminal activity and whether the alleged contact, if found, had the requisite criminal intent is very much at issue in this case. The challenged evidence may bolster the credibility of the alleged victim on the issues of identity of the perpetrator and intent and is being offered for non-propensity purposes. Further, the evidence is not overly inflammatory and can be presented without undue confusion, distraction or unreasonable delay."

Accordingly, the court held that the state could present the prior acts evidence at trial.

At trial, the state presented testimony from both B and A regarding defendant's prior acts. Before A's testimony, the court read the jury a special instruction:

> "You have heard or may be hearing evidence from and about [A]. You may use that evidence for what you deem it is worth on the issue of [defendant's] intent. You may not consider such evidence for the purpose of concluding that because [defendant] may have sexually assaulted [A], he is guilty of sexually assaulting [B].

> "Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of a motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

During a break in A's testimony, citing the Oregon Supreme Court's decision in *State v. Leistiko*, 352 Or 172, 282 P3d 857, *adh'd to as modified on recons*, 352 Or 622, 292 P3d 522 (2012), which had been decided that day, defendant asserted that prior bad act testimony should be excluded, and moved to "strike any testimony of prior bad acts that has been offered to this point." The court denied defendant's motion, noting that the circumstances of the prior act evidence relating to B and A in this case

> "were the same: circumstances of opportunity, of location, of the type of abuse sustained, of their age, their placement and family structure, and so I would again make that finding that that evidence of prior bad acts is relevant and should be received."

Defendant did not request a conditional relevance instruction under *Leistiko*. Ultimately, the jury found defendant guilty of three counts of first-degree sexual abuse, and one count each of first-degree unlawful sexual penetration, second-degree sodomy, second-degree unlawful sexual penetration, third-degree sodomy, and third-degree sexual abuse. The jury acquitted defendant on counts of first-degree rape, first-degree sodomy, second-degree rape, and third-degree rape. Defendant appeals the resulting judgment of conviction.

On appeal, defendant assigns error to the trial court's rulings on the state's motions to admit and defendant's motion to strike prior bad acts evidence relating to B and A, asserting that the court erred in admitting that evidence. As noted, defendant initially argued that the admission of that evidence was improper under OEC 404(3).[7] However, in *Williams*, the court held that OEC 404(4) supersedes OEC 404(3) in criminal cases. As the court explained in *Williams*, "by its terms, OEC 404(4)(a) makes *relevant* evidence of a defendant's other acts *admissible* in criminal cases, except as otherwise provided by specified rules of evidence." 357 Or at 13 (emphases in original); *see also id.* at 23 (evidence that a defendant in a child sexual abuse case "has a sexual interest in children would not, alone, establish that [the] defendant acted on that interest in the charged circumstances, but it is a fact that is logically relevant on that issue"). The court held that, "in a prosecution for child sex abuse, the admission of 'other acts' evidence to prove character and propensity under OEC 404(4) depends on whether the risk of unfair prejudice outweighs the probative value of the evidence under OEC 403. That determination must be made on a case-by-case basis." *Id.* at 20 (footnote omitted).

In his supplemental brief, defendant argues that, under *Williams*, OEC 403 balancing is required for all uncharged sexual misconduct evidence in child sex abuse cases such as this one. The state responds that there is a distinction between the balancing required by due process and ordinary balancing pursuant to OEC 403: "[T]he 'due process' balancing that OEC 404(4) permits is different— and more narrow—than the ordinary OEC 403 balancing in which courts typically engage." We addressed that issue in *State v. Brumbach*, 273 Or App 552, 560, 359 P3d 490 (2015), in which the state asserted that there was "a

---

[7] We note that, although, in his opening brief, defendant mentions the trial court's failure to give a *Leistiko* instruction to the jury, he does not assign error to the trial court's failure to give such an instruction. In any event, as noted, defendant did not request that the trial court give such an instruction and, as we stated in *State v. Brown*, 272 Or App 424, 434, 355 P3d 216 (2015), "in the absence of a request for a *Leistiko* instruction, [a] defendant's argument that he was entitled to that instruction is unpreserved." Furthermore, we have held that a trial court's failure to give a *Leistiko* instruction is not plain error under OEC 404(4). *See Horner*, 272 Or App at 367-69; *Brown*, 272 Or App at 434-35.

meaningful distinction between the balancing required by due process and [the balancing required under] OEC 403." Specifically, the state asserted that "due process balancing is more favorable to the admission of evidence than the balancing required by OEC 403." *Id.* In evaluating that question, we examined the court's decision in *Williams.* The court in *Williams* stated that

> "the only way that a court can ensure that the admission of 'other acts' evidence is not unfairly prejudicial and a violation of 'fundamental concepts of justice' is to conduct OEC 403 balancing. We therefore hold that that balancing is required by the Due Process Clause. Even if due process does not categorically prohibit the admission of 'other acts' evidence to prove propensity in prosecutions for child sexual abuse, it at least requires that, on request, trial courts determine whether the probative value of the evidence is outweighed by the risk of unfair prejudice."

357 Or at 18-19; *see Brumbach,* 273 Or App at 563. Ultimately, in *Brumbach,* we rejected the state's contention, concluding that, under *Williams,* due process requires OEC 403 balancing. 273 Or App at 563; *see also id.* at 563 n 11 (noting that we "take the Supreme Court's words at face value—that only OEC 403 balancing can ensure that the admission of evidence of other acts does not offend due process and, therefore, due process requires OEC 403 balancing").

In light of *Brumbach,* we reject the state's assertion that the balancing required for the admission of evidence pursuant to OEC 404(4) is narrower than ordinary OEC 403 balancing. Instead, as defendant contends, before admitting prior bad acts evidence in a child sex abuse case, the trial court must engage in OEC 403 balancing. As the court explained, "[w]hen a party objects, under OEC 403, to 'other acts' evidence offered under OEC 404(4), a trial court must engage in the balancing anticipated by OEC 403." *Williams,* 357 Or at 19.

Under the framework set forth in *Williams,* "'other acts' evidence is admissible if that evidence is relevant under OEC 401 and survives scrutiny when comparing probative value and unfair prejudice under OEC 403." *State v. Brown,* 272 Or App 424, 429, 355 P3d 216 (2015). In cases such as

this one, where a defendant is alleged to have subjected a child to sexual contact,[8] "any evidence having a tendency to make it more probable that defendant had a sexual purpose when he committed the charged acts is logically relevant under OEC 401." *Williams*, 357 Or at 21. Even where a defendant has not explicitly argued that "he lacked a sexual purpose, and even if the acts that defendant was charged with committing suggest that he acted with such a purpose," evidence that has "a tendency to increase the probability that defendant committed the alleged touching to arouse or gratify a sexual desire" is logically relevant. *Id.* at 22. Thus, as the court explained in *Williams*, in a case like this one, evidence that the defendant had a sexual interest in children is relevant under OEC 401.

Here, defendant does not assert that the prior acts evidence was not logically relevant under OEC 401. Instead, he contends that the trial court erred in admitting the evidence under OEC 403. In defendant's view, in admitting the evidence, the trial court failed to properly engage in the required balancing under OEC 403, as described in *Mayfield*, 302 Or 631, and to make a record reflecting its exercise of discretion in admitting the evidence. In addition, defendant argues that the trial court abused its discretion in admitting the evidence under OEC 403, because "the minimal probative value of the uncharged misconduct evidence in this case was substantially outweighed by the danger of unfair prejudice of that same evidence."

In *Mayfield*, the Supreme Court set forth an "approved method of analysis that should guide trial courts in their decision-making under OEC 403." *State v. Borck*, 230 Or App 619, 637, 216 P3d 915, *adh'd to as modified on recons*, 232 Or App 266, 221 P3d 749 (2009), *rev den*, 348 Or 291 (2010) (internal quotation marks omitted). As the court explained, in making a decision under OEC 403,

---

[8] In *Williams*, the defendant was charged with first-degree sexual abuse. The court observed that, to prove that crime, the state had to prove that the defendant had subjected a person under 14 years of age to "sexual contact," which is defined, under ORS 163.305(6), as "any touching of the sexual or other intimate parts of a person or causing such person to touch the sexual or intimate parts of the actor for the purpose of arousing or gratifying the sexual desire of either party." *See* 357 Or at 21. In this case, defendant was charged with a number of crimes involving sexual contact.

"the judge should engage in four steps. First, the trial judge should assess the proponent's need for the uncharged misconduct evidence. In other words, the judge should analyze the quantum of probative value of the evidence and consider the weight or strength of the evidence. In the second step the trial judge must determine how prejudicial the evidence is, to what extent the evidence may distract the jury from the central question whether the defendant committed the charged crime. The third step is the judicial process of balancing the prosecution's need for the evidence against the countervailing prejudicial danger of unfair prejudice, and the fourth step is for the judge to make his or her ruling to admit all the proponent's evidence, to exclude all the proponent's evidence or to admit only part of the evidence."

*Mayfield*, 302 Or at 645. In applying OEC 403, the court must properly exercise its discretion and must "make a record which reflects an exercise of discretion." *Id.* We "examine whether the trial court properly applied the balancing test that OEC 403 prescribes for errors of law, [and] we review the trial court's ultimate determination as to whether evidence is unfairly prejudicial under OEC 403 for abuse of discretion." *State v. Shaw*, 338 Or 586, 614-15, 113 P3d 898 (2005).

In conducting an OEC 403 analysis, in considering the "quantum of probative value of the evidence," *Mayfield*, 302 Or at 645, the court "first consider[s] why the evidence was relevant." *Brown*, 272 Or App at 431. At one end of the spectrum, other acts evidence "that is offered for nonpropensity purposes—*i.e.*, to prove motive, intent, identity, or lack of mistake or accident—generally will be admissible as long as the particular facts of the case do not demonstrate a risk of unfair prejudice that outweighs the probative value of the evidence." *Williams*, 357 Or at 19; *see State v. Haugen*, 274 Or App 127, 156-57, 360 P3d 560 (2015) (evidence relating to the belief system of gang "highly relevant to show [the] defendant's motive for assaulting the friend of a perceived 'snitch'"); *Brown*, 272 Or App at 432 (where the defendant was prosecuted for cashing forged checks, evidence of prior convictions for theft, forgery, identity theft, and possession of a forged instrument was relevant "to show that [the] defendant had not made a mistake or otherwise lacked knowledge of the status of the checks at the time he attempted to

cash them"). In contrast, when prior acts evidence relates only to character, "it is more likely that the evidence will be excluded" because that type of "evidence generally will have little or no cognizable probative value, and the risk that the jury may conclude improperly that the defendant had acted in accordance with past acts on the occasion of the charged crime will be substantial." *Williams*, 357 Or at 20. Thus, in evaluating the trial court's application of OEC 403 in this case, we must examine the purposes for which the prior acts evidence was admitted: to show identity, to bolster the credibility of the victim, and to show intent.[9]

The question whether prior acts evidence was relevant to the purposes of identity and bolstering the credibility of the victim was considered by the Supreme Court in *State v. Pitt*, 352 Or 566, 293 P3d 1002 (2012). In that case, at issue was the trial court's denial, in a prosecution for the defendant's sexual abuse of A—"the four-year-old daughter of [the] defendant's girlfriend"—of the defendant's motion *in limine* to exclude prior uncharged sexual misconduct involving the same victim and another four-year-old girl who had lived at the same residence as the defendant. *Id.* at 568. Although *Pitt* was analyzed under OEC 404(3), the court's discussion of whether prior act evidence is relevant to those nonpropensity purposes is applicable here.

The court explained that, to be relevant to the issue of identity, the prior acts evidence must show "that

_____

[9] As noted above, the trial court's letter opinion addressed the motion to admit evidence of defendant's uncharged misconduct with A. When the state later requested admission of prior acts evidence relating to B, the trial court allowed that evidence and explicitly stated that it did so for the same reasons that it had articulated for the admission of the evidence relating to A. Because the trial court considered the prior acts evidence as to both A and B to be relevant for the same purposes, we do not address separate nonpropensity purposes for which the evidence of defendant's past abuse of B may have been relevant. *Cf. State v. McKay*, 309 Or 305, 308, 787 P2d 479 (1990) (evidence of a defendant's prior sexual contacts with a minor female victim could "demonstrate the sexual predisposition this defendant had for this particular victim, that is, to show the sexual inclination of defendant towards the victim, not that he had a character trait or propensity to engage in sexual misconduct generally"); *State v. Berg*, 223 Or App 387, 398, 196 P3d 547 (2008), *adh'd to as modified on recons*, 228 Or App 754, 208 P3d 1006, *rev den*, 346 Or 361 (2009) ("[E]vidence of other sexual contacts between a defendant and a particular victim offered to show the predisposition that the defendant had for that victim is relevant for a noncharacter purpose—that is, to show the sexual inclination of the defendant towards that victim.").

a defendant operated in a novel or distinctive manner that identifies that defendant as the perpetrator." *Id.* at 576; *see Johns*, 301 Or at 551 ("[E]vidence of other crimes offered to prove identity is strictly limited to crimes committed by the use of a novel means or in a particular manner so as to earmark the acts as the handiwork of the accused. In other words, to prove identity the prior acts must be a signature crime." (Internal quotation marks omitted.)). The court explained that, for purposes of identity, the "[m]ere repetition of crimes of a similar class * * *, without more, is not sufficient." *Pitt*, 352 Or at 577. Instead, "there must be some unique and repeated feature that makes the act stand out." *Id.* The court concluded that the prior acts evidence at issue in that case failed "to meet that requirement." *Id.* The same is true in this case. Although, as the trial court noted, there were similarities between the prior acts evidence and the charged crimes, the evidence did not relate to anything novel or unique about the acts. *See State v Pinnell*, 311 Or 98, 110, 806 P2d 110 (1991) (for prior acts to be admissible to show identity, there must be "a very high degree of similarity between the charged and uncharged crimes" and the "methodology" of the acts must be "distinctive so as to earmark the acts as the handiwork of the accused"). Therefore, the evidence was not relevant to the issue of identity.

As noted, in *Pitt*, the court also addressed the use of evidence to bolster the victim's credibility. According to the court, the use of evidence of the defendant's prior sexual misconduct to bolster the credibility of the victim's assertion that the defendant had committed the charged acts against her simply amounted to the use of the evidence for propensity purposes. As the court explained, the reasoning underlying the admission of such evidence for that purpose relies merely on inferences about the defendant's character. 352 Or at 577 (citing Charles Alan Wright & Kenneth W. Graham, Jr., 22 *Federal Practice and Procedure: Evidence* § 5246, 515 (1978) (use of prior bad acts evidence to bolster a witness's identification is not a legitimate use of other crimes evidence under FRE 404(b))). Here, likewise, the admission of prior misconduct evidence to bolster the victim's credibility simply amounts to the admission of evidence for a propensity purpose. That is, the court's admission of the evidence of

defendant's prior abuse of A and B offered to bolster B's testimony regarding the charged abuse relies on the inference that defendant acted consistently with his character to sexually abuse young girls. *See id.* at 577-78.

The court in *Pitt* also addressed the admission of the prior act evidence for the purpose of demonstrating the defendant's intent. In that case, as here, the defendant asserted that he had not committed the underlying charged acts. The court explained that "other crimes evidence is relevant to prove that a defendant acted intentionally when the record establishes, in fact, that the defendant committed the charged act." *Id.* at 579. Admission of other acts evidence as relevant to a defendant's intent is based on the "doctrine of chances." Under that doctrine, one "may infer that multiple acts of repeated conduct make it unlikely that the person who performed those acts acted inadvertently." *Id.*; *see Johns*, 301 Or at 552-53 (under the doctrine of chances, the more often a defendant performs a particular unlawful act, the smaller the likelihood that the defendant acted with an innocent state of mind). For prior acts evidence to be probative of that question there must be evidence that the charged acts occurred. *See Pitt*, 352 Or at 580; *Johns*, 301 Or at 552.[10] Furthermore, to conclude that the prior acts evidence is relevant to the question of intent, the court must consider the following questions:

"(1) Does the present charged act require proof of intent?

"(2) Did the prior act require intent?

---

[10] We note that *Pitt* and *Leistiko* discuss the admissibility of evidence to show intent where a defendant has stipulated to the alleged act or when the jury has been instructed that it must find that the alleged act occurred before considering the prior crimes to determine intent. Thus, as the court noted in *Pitt*, the record must contain sufficient evidence to permit the jury to find that the charged acts had occurred. Here, of course, the issue under consideration is different from the issues in those cases. We are evaluating the trial court's discretionary determination that the probative effect of the prior acts evidence was not substantially outweighed by the danger of unfair prejudice and, as part of that evaluation, we look at the reasons the trial court considered the evidence probative. Thus, the standards discussed in *Pitt* and *Leistiko* are not directly at issue in terms of the evaluation at issue here. Nonetheless, in light of the discussion of the doctrine of chances in those cases and in *Johns*, to determine that prior acts evidence is relevant to the issue of intent, a trial court should be presented with some evidence that the defendant committed the charged acts.

"(3) Was the victim in the prior act the same victim or in the same class as the victim in the present case?

"(4) Was the type of prior act the same or similar to the acts involved in the charged crime?

"(5) Were the physical elements of the prior act and the present act similar?"

*Johns*, 301 Or at 555-56. For the evidence to be relevant to intent, the court must be "convinced that the answer to each of these questions is yes." *State v. Pratt*, 309 Or 205, 211, 785 P2d 350 (1990).

Here, the trial court was presented with a detailed account of defendant's acts of abuse against B. Furthermore, as the trial court concluded, defendant entered a not guilty plea, which constituted a denial of each of the material elements alleged in each count. Thus, defendant's intent was at issue. *See State v. Leland*, 190 Or 598, 630, 227 P2d 785 (1951), *aff'd sub nom Leland v. Oregon*, 343 US 790, 72 S Ct 1002, 96 L Ed 1302 (1952) (where a defendant enters a not guilty plea, "the state ha[s] the right to prove its case up to the hilt and to choose its own way of doing so, * * * subject only to the rules of evidence and the standard of fair play which should govern the prosecution of every criminal case"). Turning to the factors that must be evaluated under *Johns*, each of the sex offenses defendant was charged with in this case require proof of intent. Thus, the first factor is satisfied. With respect to the second factor, the prior acts against B and A, sexual conduct of the same type as alleged in the charged offenses, required intent. As to the third factor, there were two victims of the prior acts. One of them, B, is the same victim as in the present case. The other, A, is in the same class as B. Both were daughters of women with whom defendant cohabited and with whom defendant had other children, and A and B were of similar ages during the span of time during which defendant abused them. *See State v. Dibala*, 161 Or App 99, 104, 984 P2d 302 (1999) (class of victims inquiry does not require the victims to be "identical in every respect"). The evidence likewise satisfied the fourth *Johns* relevance element—both incidents, if proven, constitute sexual abuse of children with whose mothers defendant

had a romantic relationship and with whom defendant had a stepfather-like relationship.

With respect to the fifth question, "[i]n determining whether the physical similarities of the prior act and the present act are sufficiently similar that proof of the former is relevant to the issue of intent for the latter, the court must consider both the similarities and dissimilarities of the" acts. *State v. Rinkin*, 141 Or App 355, 369, 917 P2d 1035 (1996). Here, with respect to the prior misconduct against B, the victim in this case, the physical elements were similar. B described defendant's escalating sexual abuse, which began while the family lived in Umatilla County and continued once the family moved to Clatsop County. As to both sets of acts, defendant told B that he would hurt her if she told anyone, made her touch and rub his penis, put his fingers into her vagina, and touched her breasts. As to the conduct described by A as compared with the conduct described by B, the physical elements share many material similarities. Defendant began sexually abusing both girls when they were in elementary school. B said she was about seven years old, and A about 10. With both girls, defendant's conduct escalated over time. Defendant touched their bodies, placed his fingers in their vaginas, and made them touch his penis. Defendant compared the looks of both girls to their mothers, telling each girl that she had better "boobs" than her mother. Defendant eventually had intercourse with both B and A. On the other hand, in her pretrial testimony, A stated that defendant showed her pornographic videos and that her younger brother was typically home when defendant was abusing her. B did not testify to circumstances of that type. Nonetheless, when comparing the long-term course of sexual abuse described by both B and A, we conclude that the similarities far outweigh the dissimilarities. Thus, as the trial court concluded, the answer to each of the questions under *Johns* is yes and, accordingly, the prior acts evidence was relevant to defendant's intent and the trial court could properly consider it as probative of that issue in conducting its OEC 403 balancing.

To sum up, in this case the trial court concluded that the prior acts evidence was relevant to three "non-propensity

purposes"—identity, to bolster the credibility of the victim, and intent. In conducting its weighing of the probative value of the evidence against the prejudicial effect under OEC 403, the court considered the evidence to be offered for three nonpropensity purposes and probative of issues that were "very much at issue." However, as discussed above, the court was incorrect as to two of those three stated purposes. First, although the trial court considered it relevant to establish identity, as we have explained, the evidence was not relevant for that purpose. Second, in these circumstances, the purpose of bolstering the victim's credibility is merely propensity by a different name. Thus, having erred on both of those points in conducting its weighing, the trial court did not correctly consider the "quantum of probative value of the evidence." *Mayfield*, 302 Or at 645; *see Williams*, 357 Or at 19-20 (other acts evidence that is relevant for nonpropensity purposes is more likely to be admissible than evidence offered for propensity purposes, which has little or no cognizable probative value). For that reason, the trial court did not properly conduct the required balancing under OEC 403 and, in the absence of proper OEC 403 balancing, it was error to admit the prior acts evidence. *See Brumbach*, 273 Or App at 565. Furthermore, we cannot conclude that that error was harmless beyond a reasonable doubt. *See id.* at 564 ("Under *Williams*, a failure to perform the requisite balancing test is a violation of defendant's due process rights under the United States Constitution. Consequently, we apply the federal harmless error test. Federal harmless error applies to due process violations. A federal constitutional error is harmless, such that the conviction will be upheld, 'if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt.'" (Quoting *Delaware v. Van Arsdall*, 475 US 673, 681, 106 S Ct 1431, 89 L Ed 2d 674 (1986) (citations omitted).)). Thus, defendant's convictions must be reversed and the case remanded for a new trial. *See id.* at 565.

Reversed and remanded.